KINDLE *v.* STATE.

Opinion delivered June 30, 1924

1. RAPE—SUFFICIENCY OF EVIDENCE.—Evidence *held* to sustain a conviction of assault with intent to rape.

2. RAPE—INSTRUCTION AS TO PRESUMPTION OF CONSENT.—In a prosecution for rape it was not error to refuse to instruct that if the jury found that defendant had carnal knowledge of the prosecutrix the law would presume that she consented thereto.

3. RAPE—INSTRUCTION AS TO RESISTANCE BY PROSECUTRIX.—An instruction that a rape was not committed unless the prosecutrix used every means within her power to prevent defendant from having sexual intercourse with her was erroneous as eliminating the element of fear.

4. CRIMINAL LAW—IMPROPER ARGUMENT—PREJUDICE.—While it was improper in a rape case for the prosecuting attorney to suggest to the jury that "you don't know that he will rape the same color next time," the prejudice was removed where the argument was withdrawn as soon as made, at the suggestion of the court.

5. CRIMINAL LAW—NECESSITY OF OBJECTION TO ARGUMENT.—Objection to an improper argument must be made at the time, and cannot be raised for the first time in the motion for new trial.

Appeal from Conway Circuit Court; *J. T. Bullock,* Judge; affirmed.

*Eades & Eddy,* for appellant.

*J. S. Utley,* Attorney General, and *John L. Carter,* Assistant, for appellee.

SMITH, J. Appellant, a colored man, was indicted for having raped Etta Tresvant, a colored woman, and, upon his trial, was convicted of an assault with intent to commit rape, and given a sentence of five years in the penitentiary, and has appealed.

For the reversal of the judgment the following errors are assigned: (1) that the evidence is insufficient to support the verdict; (2) that the court erred in giving instruction numbered 8 over the objection of appellant, and in refusing instruction numbered 1 requested by him; (3) that the prosecuting attorney committed prejudicial error in his closing argument.

The testimony of the prosecutrix was to the effect that appellant had frequently sought to visit her, but she had declined to permit him to do so. That one Sunday night appellant met her on her way to church, and insisted on escorting her, but she refused to allow him to accompany her. After leaving the church she saw appellant, who had been waiting for her, and he told her he was going home with her. She went to a restaurant to find some one to accompany her home, but, finding no one, she started home alone. Appellant seized her by the arm

as she left for her home, and said he "would go home with her or else—" She tried to avoid him, and struggled to release his hold on her, when he opened his knife and said he would kill her if she made an outcry. She was a small woman, weighing only 115 pounds. She continued her struggle, when appellant cut her slightly in the side with his knife and said he would cut her damned head off if she did not go along. When she reached her home, which was in the yard of her employer, she pretended to have lost her key, but appellant compelled her to produce it. After unlocking the door appellant took possession of the key and locked the door, and she did not know what he did with the key until he unlocked the door about four o'clock the next morning. Appellant compelled her to go to bed with him and to have sexual intercourse with him. He took his open knife with him to the bed, and he renewed his threat to cut her head off if she made an outcry or if she refused to submit to him. She had heard that appellant had served a term in the penitentiary for shooting a woman who had refused to submit to him, and she believed he would kill her if she did not yield or if she made an outcry. She was asked why she did not call for help when she passed through her employer's yard, and answered that her employer was away from home, and would not have heard her had he been at home, as the family slept upstairs. She also testified that appellant was carrying his knife in his hand, and she was afraid he would execute his threat. She further testified that she was crying, and begged appellant to leave her, and that she pushed and scratched at him, but was afraid to carry her resistance beyond that point. That she did not sleep that night while appellant was in her room, and did not think he could have slept on account of her crying. When appellant left at four o'clock she fell asleep for a short time, but was awake before her employer had got up, and she told him what had happened as soon as he came down from his room, which was about 7:30 in the morning. She was

asked by appellant's counsel why she did not let appellant kill her before she ceased to resist, and she answered that she wanted to live to tell what had happened.

A twelve-year-old colored boy testified that he saw appellant scuffling with Etta on the way to her home; that appellant had a knife in his hand, and that at one time he was almost carrying her on his hip.

Appellant testified that he spent the night with Etta at her invitation, and certain witnesses testified that they saw appellant and Etta going towards her home in a manner which attracted no attention, and there was certain other testimony which tended to corroborate appellant's story, the truth of which was, of course, a question for the jury.

We think this testimony was legally sufficient to support the conviction.

The court told the jury that force was an essential element of the crime, and that the force might be exercised by putting the woman in fear, and that if she did not, in good faith, resist appellant's attempt, appellant was not guilty of any crime, and that, if there was no such force or putting in fear as compelled the woman to yield against her will, appellant was not guilty of any crime. This idea was enlarged upon in a number of instructions, which made it perfectly plain that it was essential that the woman's will was overcome by force or by such putting in fear as caused her to cease to resist for her own safety.

Appellant asked an instruction numbered 1, reading as follows: "The court instructs the jury that, if you find from the evidence that the defendant had carnal knowledge of the woman Etta Tresvant, then consent on her part of such carnal knowledge would be presumed until the State proved beyond a reasonable doubt that the prosecutrix used every means within her power to prevent such intercourse, and something more must be shown than a mere want of consent on the part of Etta Tresvant to the intercourse, if any, with defendant, but

it must appear from the evidence beyond all reasonable doubt that the said Etta Tresvant made and used every exertion and means within her power, under the circumstances, to prevent intercourse, if any, with defendant, and, if the evidence in this case upon this subject is such as to raise reasonable doubt as to whether said woman did use every such exertion within her power, you will give defendant the benefit of such doubt, and acquit him."

Other instructions were also asked by him which elaborated the same propositions.

No error was committed in refusing to give this instruction. It would have been a charge upon the weight of the testimony to have told the jury that there was a presumption of consent. There was, of course, a presumption of innocence which attended appellant until his guilt was established beyond a reasonable doubt, but the instructions given fully covered this phase of the case. The instruction was also erroneous in telling the jury that rape was not committed unless the prosecutrix had used every means within her power to prevent appellant from having sexual intercourse with her. Under this instruction the prosecutrix would have been compelled to continue her resistance as long as she was conscious or had strength to offer any resistance, without regard to the effect of this resistance on her safety. If, for instance, appellant's conduct had induced the fear that an outcry would cost her her life, she was not required to thus imperil her life or safety.

In the case of *Zinn and Cheney* v. *State,* 135 Ark. 342, we said: "The law does not require of the woman who seeks to protect her chastity that she shall resist as long as either strength endures or consciousness continues. It is essential that she shall not at any time consent, but none of the cases on the subject hold that she had consented because, through fear for her life or bodily safety, she had ceased to resist or failed to make an outcry."

No error was committed in refusing to charge the jury as requested by appellant.

In his closing argument the prosecuting attorney said: "Gentlemen, you don't know that he will rape the same color the next time." This argument was, of course, highly improper, but it was withdrawn as soon as it was made, at the suggestion of the court. Moreover, it does not appear that any objection was made or exception saved at the time, and, while this argument is assigned as error in the motion for a new trial, this was not sufficient to save an exception, as it is not the province of the motion for a new trial to raise objection for the first time. *Hall* v. *State,* 113 Ark. 455; *Wolfe* v. *State,* 107 Ark. 29.

The testimony was sufficient, according to the prosecutrix, to sustain the conviction, and appellant is in no position to complain that he was only convicted of an assault with the intent to commit the crime of rape.

No error appearing, the judgment is affirmed.