The Corning Bank & Trust Company v. Foster.

4-3523

Opinion delivered October 1, 1934.

656

*Oliver & Oliver,* for appellant.

*F. G. Taylor* and *Jeff Bratton,* for appellee.

MEHAFFY, J. In 1923 Arthur D. Foster, the appellee, took out a policy on his life for the sum of $5,000. The policy carried a disability clause, and was made payable on the death of appellee to his executors, administrators or assigns.

The appellee became indebted to Dr. S. P. Blackwood, and on June 1, 1926, and also on July 10, 1926, executed unconditional assignments. On August 2, 1926, Blackwood assigned the policy to the First National Bank of Corning to secure an indebtedness of approximately $4,500 and any other indebtedness which he might owe.

Foster became disabled within the terms of the policy, and the company made payments, some of which were paid to the bank and credited to Blackwood's indebtedness.

In April, 1929, the First National Bank of Corning secured a loan from the Corning Bank & Trust Company, and among the assets offered the Corning Bank & Trust Company was the indebtedness of Blackwood. In 1930 the Corning Bank & Trust Company became insolvent, and The Corning Bank & Trust Company purchased the assets, among which was the indebtedness of Blackwood secured by assignment of the policy above mentioned.

This suit was filed by appellee, alleging that his assignments to Dr. Blackwood were intended only to secure payment of a debt he owed Blackwood at the time, and that the debt had since been paid in full. It is appellee's contention that appellant has no greater title than Blackwood had. He prayed for a reformation of his assignment and for possession of the policy.

Appellant admitted that it had possession of the policy, but denied appellee's right to reform, and alleged that it was the unconditional owner by reason of the transaction above set forth. It further alleged that it, and its assignor, Corning Bank & Trust Company, with-

out knowledge or notice of appellee's contention, had relied upon the assignments executed by appellee to their prejudice, and that appellee is estopped to claim ownership.

There was a trial and a decree in favor of appellee, and the case is here on appeal.

Both Foster and Blackwood testified that, while the assignment was unconditional, it was made for the purpose of securing appellee's indebtedness to Blackwood, which was at that time $1,580. They further testified that, when Blackwood made the assignment to the bank, appellee only owed Blackwood $905, and they talked to Mr. Lindsey, of the bank, and told him that the assignment to Blackwood was made for the sole purpose of securing Foster's indebtedness to Blackwood, and that it had all been paid except $905; that the bank knew that the assignment was made to Blackwood for the purpose of securing the debt, and knew the amount of the indebtedness. They testified that they told the bank that the assignment was not intended to be an absolute assignment, but the intention was that, when the debt was paid, the policy was to be returned to appellee. There was other evidence corroborating the statements of the payments to Blackwood, reducing the indebtedness to $905. The evidence of Foster and Blackwood was not contradicted.

The witnesses for appellant testified that they read the assignment, and relied on Mr. Arnold's statement that it had an assignment of a life insurance policy as security for Blackwood's note. F. B. Sprague, J. G. Black and J. F. Arnold, all testified to substantially the same facts: that they took the assignment, and understood that they were getting the policy because the assignment was unconditional.

There was considerable testimony introduced, but it is immaterial in the determination of the issues in this case, and for that reason we do not set it out.

The appellant makes two contentions: first, that the court erred in its finding that appellee was entitled to a reformation of his assignments to Dr. Blackwood; second, that the court erred in its finding of law to the ef-

fect that Corning Bank & Trust Company could not rely upon the written acknowledged assignments from appellee to Dr. Blackwood, and that appellee is not estopped to deny they conveyed absolute title.

As to the first proposition, it is urged that appellee was not entitled to reformation of his assignments unless the evidence was clear and convincing, and appellant cites and relies on two cases: *Purvis* v. *Horn,* 185 Ark. 323, 27 S. W. (2d) 48, and *Fullerton* v. *Storthz,* 182 Ark. 751, 33 S. W. (2d) 714. In the case in 185 Arkansas, there was an assignment, and the court said: ''If the second assignment set out above had been the only assignment, it would, of course, have been proper to tell the jury that it could not be treated as a mere pledge unless the testimony to that effect was clear, satisfactory and convincing.''

In the instant case, there was the positive testimony of both Blackwood and Foster that the assignments were intended only for the purpose of securing the indebtedness to Blackwood, and that this was known to the bank. The representative of the bank, who received the assignment and contracted with Blackwood, was not a witness, and therefore the testimony of Blackwood and Foster was undisputed.

The evidence shows that S. P. Lindsey was the vice president of the First National Bank, and had positive knowledge that the assignment to Blackwood was for the purpose of securing a debt which at that time amounted to $905. The fact that both Blackwood and Foster testify to this, and that Lindsey does not testify, make the evidence on this, we think, clear and convincing.

It is contended by the appellant that the fact that appellee had Lindsey subpoenaed, and did not put him on the stand raises the presumption that, if he had been examined, his testimony would have been unfavorable. We do not agree to this contention. He was an officer of the bank; both appellee's witnesses testified to the transaction with him; he was present, and the appellant could have put him on the stand, and would doubtless have done so if he would have contradicted the testimony of Foster and Blackwood.

In the case in 182 Arkansas, the court said that a contract would not be reformed for mistake unless it be clearly shown that the mistake was common to both parties, and that the contract as executed does not express the contract as understood by either of them.

We think the finding of the chancellor on this question was correct. Moreover, the insurance contract, while assignable, was not negotiable, and any defense which could have been made to a suit by Blackwood, could also have been made against his assignee. *General Motors Acceptance Corp.* v. *Sanders,* 184 Ark. 957, 43 S. W. (2d) 1087.

Again this court said: "The fifth requisite of a negotiable instrument under that section is that it must be payable to order or bearer. The instruments sued upon are lacking in that essential, and are not negotiable instruments. Since the instruments were not negotiable, but assignable only, appellant took them subject to all defects or infirmities available to the maker as a defense against the payee therein." *General Motors Acceptance Corporation* v. *Salter,* 172 Ark. 691, 290 S. W. 584.

It is next contended that the court erred in holding that the bank could not rely on the written assignments, and erred in holding that appellee is not estopped. Appellant calls attention to 37 C. J. 438. The paragraph relied on in C. J. reads as follows: "An assignor may be estopped to question the validity of an assignment of a policy, where the elements of an estoppel are present; otherwise not."

That same paragraph also contains the following: "It has been held, however, that the assignor is not estopped to set up title as against one to whom the assignee assigned the policy."

There could be no estoppel in this case for several reasons; first, the court found that the bank knew that the original assignment was for the purpose of securing a debt; second, the court found that there is still a balance of the debt due Blackwood. Appellee would have no right to maintain a suit for the policy until the debt secured by the assignment was paid. The policy, being

assignable but not negotiable, put the bank upon inquiry to discover what interest Blackwood had in the policy, and especially is this true since the assignment by Blackwood was of his interest only.

There is no claim and no evidence that the appellee did anything that would estop him, and he did nothing that would prejudice the rights of the appellant, and the only thing that appellant claims would operate as estoppel is making the unconditional assignment. As we have already said, the instrument, being assignable but not negotiable, appellant was put on notice, and it was its duty to make inquiry and ascertain for what purpose the assignment was made. In addition to this, Blackwood's assignment was an assignment of his interest only, and this put the appellant on notice.

"As to estoppel and laches, the onus is on the party setting them up to make out the facts on which they rest." *Locke* v. *Bowman,* 168 Mo. App. 121, 151 S. W. 468.

"Nobody ought to be estopped from averring the truth, or ascertaining a just demand, unless, by his acts or words or neglect, his now averring the truth or ascertaining the demand would work some wrong to some other person who has been induced to do something, or to abstain from doing something by reason of what he had said or done or omitted to say or do." Herman on Estoppel, vol. 1, p. 6.

"Equitable estoppels only arise when the conduct of the party estopped is fraudulent in its purpose or unjust in its results, and this forms the distinction between the common-law estoppel, and that which has grown up in equity in modern times." Herman on Estoppels, vol. 2, p. 862.

Appellant next calls attention to Cooley's Briefs on Insurance, vol. 2, p. 1115. There is nothing in this authority that supports the contention of the appellant.

Appellant cites and relies on the case of *Tower* v. *Stanley,* 220 Mass. 429, 107 N. E. 1010. The court there said, among other things: "The first notes being valid for their original tenor, the plaintiff concedes that he must pay the amounts, and it would follow that upon pay-

ment he would be entitled to a cancellation of the assignment and a return of the policy.''

Appellant next calls attention to *Fidelity National Bank & Trust Co.* v. *McNeal*, 67 Fed. (2d) 516. We find nothing in this case that supports the contention of the appellant. The certificates transferred in that case bore the blank indorsement of the paving company, the original owner, and the appellant indorsed nothing on them to indicate its ownership or interest in them. It thereby clothed the Municipal Securities Corporation with every indicia of ownership. The court held: ''Having clothed that company with every indicia of ownership, the appellee having acquired the securities in good faith, for value, and without notice of appellant's interest, it is estopped to assert that interest to defeat appellee.''

The facts in this case clearly show that the original assignment by Foster was to secure the payment of his indebtedness to Blackwood, and that the bank took Blackwood's assignment of his interest with full knowledge of the facts. There is considerable conflict in the authorities as to the assignment of insurance policies. Many courts hold that a life insurance policy cannot be assigned to any person having no insurable interest, except as security for a debt. Those courts hold that an assignment to a person who has no insurable interest except for the purpose of securing a debt, is void, and that when made for the purpose of securing a debt, they are valid only for that purpose. This court, however, has held otherwise.

''But it is said that Mrs. Bledsoe had no insurable interest in the life of Henry, and that the assignment was void for that reason. The law does not allow one having no interest in the life of another to speculate upon that life by taking out a policy of insurance upon it; and, if Mrs. Bledsoe had taken out this policy on the life of Henry in her own name, there might be some question as to whether she had such an interest in his life as would support the policy. But every person has an insurable interest in his own life; and, as Henry had the right to take out a policy on his own life, payable to his administrator or assigns, it is not disputed that this policy was

valid. The policy being valid and belonging to Henry, he had, on the approach of death, the same right to give and transfer this property to any one in whose welfare he felt an interest as he had to dispose of any other property that he owned." *Matlock* v. *Bledsoe*, 77 Ark. 60, 90 S. W. 848. This case was followed in *Page* v. *Metropolitan Life Insurance Co.*, 98 Ark. 340, 135 S. W. 911; *National Life & Accident Ins. Co.* v. *Jackson*, 179 Ark. 412, 16 S. W. (2d) 469; *Home Life Ins. Co. of N. Y.* v. *Masterson*, 180 Ark. 170, 21 S. W. (2d) 414.

In the last case the court said: "Again, in *Page* v. *Metropolitan Life Ins. Co.*, 98 Ark. 340, 135 S. W. 911, it was held that the assignment of a life insurance policy to one not having an insurable interest in the life of the insured is not objectionable as being by way of cover for a wager policy, unless, at the time the policy was taken out, the insured intended to make such assignment.

"This court has adhered steadily to this ruling, and it has been uniformly held that a wagering contract of insurance is contrary to public policy, and void."

The assignment therefore is not void, although there may be no insurable interest, but since the policy is assignable but not negotiable, the assignee of Blackwood had no greater right than Blackwood had. Besides, the evidence shows that the bank knew that the original assignment to Blackwood was for the purpose of securing a debt.

We find no error, and the decree is affirmed.