CRAIG *v.* STATE.

Criminal 4083

Opinion delivered March 28, 1938.

*Lyman L. Mikel* and *George W. Dodd,* for appellant.

*Jack Holt,* Attorney General, and *John P. Streepey,* Assistant, for appellee.

SMITH, J. Appellant was tried and convicted under an information filed against him by the prosecuting attorney of Sebastian county which, omitting formal parts, reads as follows:

"The said defendant, in the county, district and state aforesaid, on the 13th day of August, 1937, then and there being assembled with more than three others who were assembled together with the unlawful and wilful intent mutually to assist each other to do an unlawful act, assault and battery, with force and violence against the persons of others, unlawfully, wilfully, in a violent and turbulent manner and in furtherance of said unlawful purpose, did make an assault upon Allen Cox, John W. Duey and H. T. Tucker, and did then and there unlawfully, wilfully and in a violent and turbulent manner, strike and beat the said Allen Cox, John W. Duey and H. T. Tucker, against the peace and dignity of the state of Arkansas."

The validity of the information was raised both by demurrer and by a motion in arrest of judgment, and this appears to be the principal question raised on this appeal, although the sufficiency of the testimony to sustain the conviction is also questioned, and error is assigned in giving an instruction numbered 2.

The information appears to have been drawn to conform to an indictment for rioting, which was held sufficient to charge that offense in the case of *Roberts* v. *State,* 21 Ark. 183. The principal difference between this information and that indictment is that three persons were there indicted, whereas the information here alleges the name of no other rioter except appellant, and does not allege that the names of the other participants in the riot were unknown. The insistence is that as rioting is an offense which cannot be committed without the participation of three or more persons, the names of that number of the rioters should be alleged, and if the names of the others besides the defendant be unknown that fact should be alleged. It will be observed that the information here under review charged that appellant "with more than three others," whose names are not stated, committed a riot, and it was not alleged that the names of the others were unknown.

This question was very thoroughly considered in the case of *Martin* v. *State,* 115 Ga. 255, 41 S. E. 576. The indictment in that case charged that the defendant and another person named, "together with others," committed a riot. At the trial, the defendant was convicted, but the other person named in the indictment was acquitted, and a motion was filed to arrest the judgment. The Supreme Court of Georgia held in the case cited that the conviction of the defendant would be upheld although the only other defendant named was acquitted because it was established by the evidence that other persons capable of committing the crime participated with the person convicted in the criminal acts charged in the indictment. The court held that the failure to allege in the indictment that the other persons were unknown would be ground for quashing the indictment on special demurrer, but would not constitute a reason either for arresting the

judgment or for granting a new trial. In so holding Justice Cobb said: "In *Rex* v. *Sudbury,* 12 Mod. 262, 'case' 473, s. c. 1 Ld. Raym. 484, it appeared that several persons were indicted for riot, and all but two were acquitted. The judgment was arrested; but Lord Chief Justice Holt remarked that if the indictment had been that the defendants, 'with divers other disturbers of the peace,' had committed the riot, the King might have had judgment."

In commenting upon the failure to allege that the names of the other rioters were unknown Justice Cobb said: "Had the word 'unknown' been added to the allegation in reference to the other persons who committed the offense, the effect would have been exactly the same; for this would have allowed the state to prove participation by the accused with any other person capable of committing the crime. The addition of the word would not have restricted the investigation in the slightest degree."

So, here, the allegation that the names of the other rioters were unknown would have imparted no information to appellant and would not have restricted the state in making proof that at least two others participated with appellant in the riot.

The appellant alone was charged with the offense of rioting. But this is permissible, although, to sustain a conviction, it was essential that the participation of at least two other persons in a common unlawful purpose be shown, and unless that be shown none may be convicted, for the reason that the participation of as many as three persons in a common unlawful purpose must be shown to constitute the offense. Section 3503, Pope's Digest.

On this question Justice Cobb said in the case above cited that "One person may be indicted for a riot or conspiracy, but the general rule is that the names of the other persons who participated with him in the unlawful acts must be set forth in the indictment." But he also said that the omission to allege the names of the other rioters, or that their names were unknown, was "a defect of form merely, and not of substance," and did not render the conviction a nullity, although a special demurrer to the indictment should have been sustained.

It, therefore, appears that good pleading required either that the names of the other rioters be alleged, or that it be alleged that their names were unknown; but we do not think the judgment of conviction must be reversed on that account.

. Initiated Act No. 3, adopted by the people at the November, 1936, general election, (Acts 1937, p. 1384) appears to have been designed and to have been adopted to cover cases of this character. This act is entitled, "An Act to Amend, Modify and Improve Judicial Procedure and the Criminal Law, and for Other Purposes."

Section 22 of this act reads as follows: "Section 22. *Contents* of *Indictments.* The section of Crawford and Moses' Digest numbered 3028 is hereby amended to read: "Section 3028. *Contents* of *Indictments.* The language of the indictment must be certain as to the title of the prosecution, the name of the court in which the indictment is presented, and the name of the parties. It shall not be necessary to include statement of the act or acts constituting the offense, unless the offense cannot be charged without doing so. Nor shall it be necessary to allege that the act or acts constituting the offense were done wilfully, unlawfully, feloniously, maliciously, deliberately or with premeditation, but the name of the offense charged in the indictment shall carry with it all such allegations. The state, upon request of the defendant, shall file a bill of particulars, setting out the act or acts upon which it relies for conviction."

The next section of this act (§ 23) sets out a form of indictment reading as follows: "The grand jury of Pulaski county, in the name and by the authority of the state of Arkansas, accuse John Doe of the crime of murder in the first degree (or other crime, as the case may be), committed as follows: The said John Doe, on January 1, 1936, in Pulaski county, did murder Richard Roe, against the peace and dignity of the state of Arkansas."

But for this act such an indictment, under innumerable decisions of this and of all other courts, would be insufficient to charge the crime of murder in the first degree.

By § 22, above quoted, naming the offense charged is made sufficient to carry with it the allegations required

to constitute that offense, without a statement of the acts constituting it, unless the offense cannot be charged without doing so. If the allegations are insufficient to enable the accused to properly prepare his defense he may require the state to file a bill of particulars "setting out the act or acts upon which it relies for conviction."

Here, the accused did not ask that the state be required to file a bill of particulars. Had he thought it necessary to properly prepare his defense that the names of the other rioters be alleged, or if their names were unknown, that that fact be alleged, he should have made such a request, which the trial court, no doubt, would have granted. We conclude, therefore, that the information is sufficient to sustain the conviction.

The objections to instruction numbered 2 are that it is argumentative, and instructs upon the weight of the evidence. This instruction reads as follows: "You are instructed it is not necessary that the state show the criminal intent of the defendant by direct evidence, but that the criminal intent of the defendant may be inferred from all the facts and circumstances of the case, and so if you find beyond a reasonable doubt that the defendant, being then and there assembled with more than three others who were assembled together with the unlawful and wilful intent mutually to assist each other to do an unlawful act, assault and battery with force and violence against the persons of others and in furtherance of said unlawful purpose, did make an assault upon Allen Cox, John W. Duey and H. T. Tucker, and did then and there unlawfully, wilfully and in a violent and turbulent manner strike and beat the said Allen Cox, John W. Duey and H. T. Tucker or either of them, then you should find the defendant guilty of riot."

There was no specific objection to the instruction, and in the absence of such an objection we think the objection now made to it is not well taken.

As to the sufficiency of the testimony but little need be said. The testimony on the part of the state was to the effect that the employees of the Tucker Lumber Company were on strike and the plant was being picketed. Appellant was one of the pickets. Two carloads of lumber

had been received at the plant, which the company was unable either to sell or have unloaded. To stop freight demurrage the office force undertook to unload the lumber. A large number of persons, according to some estimates as many as 500, were around the company's plant. The persons who were unloading the lumber were repeatedly cursed, and members of the crowd yelled that they would get them when they left the plant. The police then present prevented violence at the time. Tucker, the president of the company, left the plant in his car after the lumber had been unloaded about 5:30 p. m. He was accompanied in his car by Allen Cox, the office manager and secretary, and John Duey, who was a salesman. When these three reached the down-town office a large crowd had followed and were assembled. A truck containing five or six men drove up rapidly. Tucker got out of his car on the left and Cox on the right, and as they did so someone yelled, "There they are," and others said, "Hit him! Hit him! Hit him!" Appellant said to Cox: "I will teach you to be a scab," and proceeded to beat Cox. Cox testified: "He (appellant) knocked me in the face, and knocked my glasses off, and I couldn't straighten up." Defendant put his arm around Cox's neck and beat him to his entire satisfaction as other members of the crowd prevented a rescue. The doctor who attended Cox testified that Cox's lower lip was torn loose on the inside from the gum, that there were knots on his head, and Cox's face looked like a beefsteak. Cox was confined in bed for the next two days and fainted when he attempted to get out of his bed. Tucker attempted to go to the rescue of Cox, when one member of the crowd "knocked me out," as Tucker expressed it. Duey also attempted to rescue Cox, when another member of the crowd grabbed him around the waist and someone knocked him down, and when he arose he was again knocked down.

This testimony fully supports the finding that the defendant and at least two others were acting together pursuant to a common purpose to assault and beat Cox, and Duey, and Tucker, as alleged in the information.

Appellant testified, as did a number of other witnesses in his behalf, that he did not follow the crowd

from the plant down-town, but that he remained at the plant on picket duty. Evidently the jury did not believe this testimony, otherwise under the instructions of the court appellant would have been acquitted. It is insisted that it was arbitrary on the part of the jury to disregard this positive testimony; but we do not think so in view of the fact that appellant was thoroughly identified as one of the men who beat up the occupants of the Tucker car and was the man who had beaten Mr. Cox. Especially is this true in view of the testimony of Cauthron, the superintendent of the plant, and Jim Cline, an employee, who remained at the plant after the crowd left following the Tucker car. Cauthron and Cline testified that only a few pickets remained at the plant, and appellant was not one of those who remained. These were questions of fact for the jury, and have been concluded by the jury's verdict.

There appears to be no error, and the judgment is, therefore, affirmed.