SLOAN v. STATE.

4431                                        197 S. W. 2d 757

Opinion delivered November 25, 1946.

Rehearing denied December 23, 1946.

740

*Roy Gean* and *Finis Batchelor,* for appellant.

*Guy E. Williams,* Attorney General, and *Earl N. Williams,* Assistant Attorney General, for appellee.

GRIFFIN SMITH, Chief Justice. Bill Mondier, Orville Wayne Sloan and Jerry McCabe were jointly charged with having murdered Gerald Bradley. Sloan was granted severance and has appealed from an adverse verdict and judgment that he serve five years in penitentiary. This is the minimum fixed for murder in the second degree, the maximum being twenty-one years. Pope's Digest, Sec. 2979.

Although the motion for a new trial lists thirty-four alleged errors, only two are seriously argued: (a) There was insufficient evidence to support the verdict; (b) incompetent testimony was admitted.

The "Spot" is a place of entertainment where beer is sold. It was managed by T. C. Barker, who with his wife and son were preparing to close at eleven o'clock the night of March 18, 1946. James, Vernon, and Gerald Bradley were Spot patrons, drinking beer, when Sloan, with Mondier and McCabe, came to or near the main door and virtually demanded admittance, and service. They were told by Jack—son of T. C. Barker—that the place was closed, and no more drinks would be sold. When the trio became insistent Jack called his father. The record is not clear regarding immediate conduct of the opposing factions, but T. C. Barker testified that as the Bradley boys started to leave, ". . . one of the fellows outside kicked at one [of the Bradleys] and it looked like a fight started on the sidewalk."

James Bradley testified that during the difficulty he encountered Sloan, McCabe, and Mondier "in the middle of the street." Sloan stabbed James, but the latter did not see a knife. The injured man was cut in the abdomen and as a result had to spend sixty-three days in a hospital. Gerald (who twenty-four hours later died from effect of an abdominal knife wound) was standing within "about" four steps of James when the cutting took place, and the two transactions—that is, the wounding of Gerald and James—occurred "almost simultaneously." Vernon was cut "in the jaw and neck, and behind the ear."

In an effort to show the belligerent state of mind entertained by Sloan, McCabe, and Mondier, proof was offered that soon after the cutting the three, still seeking revelry, went to a restaurant in Van Buren—the "Dinery." When appellant, on cross-examination, was asked what happened there, an objection was interposed. The Court held that the question was not improper. The witness then replied, as shown in the footnote.[1]

Sloan was asked if he, McCabe, and Mondier, were fined "In the Mayor's Court over there for assault and battery," to which the answer was, "Yes, sir."

In response to the defendant's motion for a bill of particulars, the Prosecuting Attorney alleged that Sloan, Mondier, and McCabe provoke a difficulty for the deliberate purpose of assaulting Gerald Bradley and the other two; that, although the fatal stabbing was done by McCabe, Sloan and Mondier were present and engaged in the transaction as part of a common plan. The bill of particulars closed with this sentence: "That the said Orville Wayne Sloan, in assaulting James Bradley, did aid, abet, and assist the said Jerry McCabe in assaulting and killing Gerald Bradley."

---

[1] "We ordered a sandwich. Some girls were sitting in a booth with a soldier and a sailor. [The soldier and sailor] went back to the rest room and McCabe went over there and was talking with the girls. He had made a few slight remarks the girls did not like when the soldier and sailor came back and asked about it. Somebody said 'not to have any trouble,' and McCabe struck the soldier and they went outside and had a fight."

Initiated Act No. 3, adopted in 1936, (Acts 1937, p. 1384) abolishes the distinction between accessories before the fact, and principals. Pope's Digest, § 3276. It is immaterial, therefore, that the information charged Sloan with murder in the first degree. McCabe, likewise charged, was convicted and sentenced to serve twenty-one years in prison. The fact that James and Gerald Bradley were standing within about four steps of each other when Sloan cut James, and the further testimony given by James that Gerald was stabbed virtually at the same time—this evidence, considered in connection with circumstances attending the hostile conduct of Sloan, McCabe, and Mondier, was sufficient to justify the jury's belief that there was a concerted plan; or, if no particular plan had been formed, then all three assailants simultaneously undertook (each in aid of the others) to inflict punishment irrespective of consequences to those who were the objects of their deadly aggression. The testimony was sufficient.

Was it competent to introduce evidence of what occurred in Van Buren? Appellant, after saying that McCabe struck the soldier, was asked if he (Sloan) took part in the fight. The reply was, "No, sir, I didn't know any trouble occurred." The Prosecuting Attorney then said he was prepared to prove that Sloan, McCabe, and Mondier engaged in an assault at the Dinery shortly after the Bradleys were cut, and that the evidence was intended to sustain contentions that the three men were engaged in a common plan or scheme [of violence] and answers to the questions would show Sloan's mental condition and that of the other two. Although the Court ruled these allegations might be proved, the Prosecuting Attorney confined his questions concerning Sloan's conduct to matters of record: that is, to admissions that he, with the others, had been fined.

While the rule is that acts constituting an offense other than the crime for which an accused is being tried may not be shown if such acts occurred after the chief transaction had been consummated, (unless so closely related as to form a part of the *res gestae*) yet where,

as here, the defendant is being tried as a principal and is being cross-examined, his admissions are competent for the purpose of testing credibility. Appellant did not ask that this limitation be placed upon the evidence, but insisted it was incompetent—which means, of course, that it could not be used for *any* purpose. This being an erroneous view, it cannot be maintained now that appellant suffered prejudice; hence, it is unnecessary to decide whether the separate physical engagements for which fines were assessed came about by reason of a planned objective, or because of a purpose to "take on" all comers.

Affirmed.