Sidney PARKER *v.* STATE of Arkansas

CR 78-158                                578 S.W. 2d 206

Opinion delivered March 19, 1979
(Division II)

*Thomas G. Montgomery*, Public Defender, for appellant.

*Steve Clark*, Atty. Gen., by: *Catherine Anderson*, Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Appellant argues seven points for reversal of his conviction of selling or delivering a controlled substance on April 14, 1977. They are:

I

THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S OBJECTION TO THE FORM OF THE PROSECUTOR'S VOIR DIRE REGARDING UNDERCOVER AGENTS.

II

THE TRIAL COURT ERRED IN ALLOWING THE PROSECUTION TO PROCEED ON THE THEORY OF AN ACCOMPLICE, WHILE THE

INFORMATION CHARGED THE APPELLANT AS PRINCIPAL.

## III

THE TRIAL COURT ERRED IN PERMITTING THE POLICE OFFICER TO TESTIFY ABOUT HIS EFFORTS TO SET UP A "BIG BUY" UNRELATED TO THE CHARGE AGAINST THE DEFENDANT.

## IV

AT THE CLOSING OF THE STATE'S CASE IN CHIEF, THE TRIAL COURT ERRED IN REFUSING THE DEFENDANT'S REQUEST FOR AN INSTRUCTION OF THE UNEXPLAINED FAILURE OF A PARTY TO PRODUCE A WITNESS, WHEN THE STATE HAD REFUSED TO CALL ITS UNDERCOVER AGENT TO TESTIFY.

## V

THE TRIAL COURT ERRED IN ALLOWING THE PROSECUTION TO LEAD THE DEFENDANT'S WITNESS IN MATTERS BEYOND DIRECT EXAMINATION.

## VI

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR DIRECTED VERDICT AFTER FOIL PACKAGE WAS FOUND TO CONTAIN NO EVIDENCE OF HEROIN.

## VII

THE DEFENDANT WAS PREJUDICED BY THE PROSECUTOR'S CLOSING ARGUMENT.

## I

Appellant objected to the prosecuting attorney's state-

ment during voir dire with reference to the state's use of undercover agents in controlled substance cases and his definition of an undercover agent on the ground that this was not a voir dire question but was testimony as to what an undercover agent does. The prosecuting attorney explained that he was laying a predicate and the objection was overruled. The inquiry then propounded to the prospective jurors pertained to the possibility of bias or prejudice against officers in that role, who might become witnesses in the case.

The extent and scope of voir dire examination of prospective jurors are matters lying within the sound judicial discretion of the trial court, the latitude of which is rather wide. Rule 32.2, Arkansas Rules of Criminal Procedure. *Finch* v. *State,* 262 Ark. 313, 556 S.W. 2d 434. *Lauderdale* v. *State,* 233 Ark. 96, 343 S.W. 2d 422. We will not reverse a ruling of the trial judge in permitting inquiries intended to elicit any possible bias or prejudice that might influence a venireman's verdict in the absence of a manifest abuse of that discretion. *Cooper* v. *Kelley,* 131 Ark. 6, 198 S.W. 94.

Appellant contends that the statement was "testimony" by the prosecuting attorney as to the character and credibility of the state's witnesses before they testified. The trial judge, who saw and heard the voir dire examination, was in the best possible position to judge whether it was conducted in good faith or was designed to create a bias or prejudice favorable to the state. *Lauderdale* v. *State,* supra. In passing on the good faith of the interrogator, the trial court necessarily must exercise a large amount of discretion. *Bethel* v. *State,* 162 Ark. 76, 257 S.W. 740. We cannot say that there was a manifest abuse of discretion in this instance.

II

The position of appellant on this point is somewhat confusing. He was charged as a principal. At some point during the examination of Robert York, a state policeman who worked primarily in an undercover capacity, as he was testifying about an alleged transaction with appellant, appellant's attorney (who is not representing him on this appeal) interposed an objection to allowing the state to

amend its information or to try appellant as an accomplice. The attorney said that he had relied upon the language in the information and the opening statement of the deputy prosecuting attorney to the effect that appellant had delivered heroin.

York had testified that, when he expressed an interest in purchasing some heroin, Parker had said that he could get it for York if York would take him to the Ramada Inn, and that, after he had taken Parker there, Parker got out of the vehicle in which they had been travelling, went between some hallways and into the interior area of the motel and then returned and delivered to York a substance (later analyzed as heroin) and accepted $15 from York. The objection was based upon the fact that appellant was not charged with having stood by, aided, abetted or assisted another in the delivery of heroin and, there had been nothing to indicate that Parker was to be tried as an accessory. The attorney also pleaded surprise and moved for a continuance if the state was to be allowed to amend its information to charge that his client was an accomplice or accessory. The prosecuting attorney insisted that he was not asking that the information be amended, but he noted that, in a telephone conversation prior to the trial, Parker's attorney had said that, in a technical sense, his client had not made a delivery, in that value was not received and his client was simply an errand boy between the police officers and the real heroin dealer. The prosecuting attorney simply took the position that the jury should be instructed as to accomplice or accessory liability and asserted that, when Parker's attorney pursued the accomplice theory in voir dire examination, he had informed the trial judge that the state would request a charge to the jury on accomplice liability.

At the conclusion of all the evidence, the trial judge gave a correct instruction stating that a person is criminally liable for the conduct of another, when he is an accomplice to the other in the commission of a crime and defining an accomplice in the language of Ark. Stat. Ann. § 41-303 (Repl. 1977). This definition includes one who solicits another to commit an offense, or who aids or attempts to aid another in planning or committing it. This instruction was given over the objection of appellant on the grounds heretofore stated

and on the ground that the instruction did not require that it be shown that the defendant must have received something of value before he could be found guilty as an accomplice.

Appellant argues here that he first became aware that a conviction was sought on the basis that he was an accomplice, rather than a principal, during York's testimony, and that the offense charged was not stated with that degree of certainty required for pronouncement of a judgment of conviction or to enable him to plead the judgment in bar of further prosecution for the same crime.

In the first place, appellant relies upon such cases as *Slay v. State,* 161 Ark. 90, 255 S.W. 292 and *State v. Masner,* 150 Ark. 469, 234 S.W. 474, which were decided before the adoption of Initiated Act No. 3 of 1936, which materially changed the requirements as to allegations which must be included in an indictment or information. It is not necessary that the indictment state the act or acts constituting the offense, unless the offense cannot be charged without doing so. It is only necessary that the state file a bill of particulars setting out the act or acts on which it relies, when requested to do so by the defendant. Ark. Stat. Ann. § 43-1006 (Repl. 1977). See *Bosnick v. State,* 248 Ark. 846, 454 S.W. 2d 311; *Bryant v. State,* 208 Ark. 192, 185 S.W. 2d 280. If the allegations of the information were not sufficient to enable appellant to properly prepare his defense, he should have requested a bill of particulars. *Craig v. State,* 195 Ark. 925, 114 S.W. 2d 1073. There is nothing in the abstract of the record to indicate that such a request was made and appellant is in no position to object here to the state's failure to file one. *Smith v. State,* 231 Ark. 235, 330 S.W. 2d 58; *Budd v. State,* 198 Ark. 869, 131 S.W. 2d 933. Even if there had been such a request, it was only necessary that the bill of particulars state the act relied upon with sufficient certainty to apprise the defendant of the specific crime with which he is charged. The information charged Parker with the crime of violation of the Arkansas Controlled Substances Act and stated that it was committed as follows:

The said defendant on the 14th day of April, 1977, in Crittenden County, Arkansas, did unlawfully and

feloniously sell or deliver a controlled substance, to-wit: heroin, in violation of the Arkansas Controlled Substances Act, against the peace and dignity of the State of Arkansas.

If the information contained all that was required by statute prior to the adoption of Act 3, appellant would not have been entitled to a bill of particulars, because the information itself was a bill of particulars. *Bryant* v. *State,* supra. The information here was sufficient even under the cases relied upon by appellant. The acts constituting the offense are stated as fully as were those in *Masner.* And in *Slay,* an essential element of the offense of perjury was omitted. Here the information was sufficient because all the essential elements of the crime were covered in the statement of the acts constituting the offense. *Ragsdale* v. *State,* 222 Ark. 499, 262 S.W. 2d 91; *Silas* v. *State,* 232 Ark. 248, 337 S.W. 2d 644, cert. den. 365 U.S. 821, 81 S. Ct. 705, 5 L. Ed. 2d 698.

Even under the statutes governing prior to Initiated Act No. 3, the rigidity of the requirements of particularity in detailing the acts constituting the offense charged were relaxed, so that the particular circumstances of the offense were not required to be charged unless they were necessary to constitute a complete offense, and where the offense was charged with sufficient certainty to enable the court to pronounce a judgment of conviction, the indictment was sufficient. *Bramlett* v. *State,* 184 Ark. 808, 43 S.W. 2d 364. Since the abolition of the distinction between principals and accessories before the fact, an allegation in the information that an accessory committed the crime is sufficient, even though he was only present, aiding, abetting and assisting. *Sloan* v. *State,* 210 Ark. 739, 197 S.W. 2d 757; *Hunter* v. *State,* 104 Ark. 245, 149 S.W. 99. See also, Leflar, The Criminal Procedure Reforms of 1936 — Twenty Years After, 11 Ark. Law Rev. 117. The allegations in the information were certainly sufficient basis for a judgment of conviction, even if it could be said that appellant was an accessory only. *Lewis* v. *State,* 220 Ark. 914, 251 S.W. 2d 490; *Fleeman* v. *State,* 204 Ark. 772, 165 S.W. 2d 62; *Burns* v. *State,* 197 Ark. 918, 125 S.W. 2d 463.

It is difficult to see how appellant could claim surprise.

There is no distinction between principals on the one hand and accomplices on the other, insofar as criminal liability is concerned. Ark. Stat. Ann. §§ 41-301 — 41-303 (Repl. 1977). As far as we can tell from this record, the state has always contended, and still contends, that Parker was a principal. Under the Arkansas Criminal Code, the word accomplice does not imply (as "accessory" once did) that another person is the principal in a criminal transaction. When two or more persons assist one another in the commission of a crime, each is an accomplice and criminally liable for the conduct of both. Each participant is criminally liable, ultimately, for his own conduct, but he cannot disclaim responsibility because he did not personally take part in every act that went to make up the crime as a whole.

The state's evidence tended to show that Parker approached the vehicle in which York and two confidential informants had been cruising the streets and asked if the occupants were looking for "something for the head" and, when York said that he was "looking to cop a $50 paper of heroin," made the proposal that York take him to the Ramada Inn. The offense with which Parker was charged does require actual, constructive or attempted transfer of a controlled substance in exchange for money or something of value, but the fact that the person making the transfer acts as the agent of either the seller or the purchaser does not remove the transfer from the coverage of Ark. Stat. Ann. § 82-2601 (f). *Curry* v. *State,* 258 Ark. 528, 527 S.W. 2d 902; *Fant* v. *State,* 258 Ark. 1015, 530 S.W. 2d 364. See also, *Foxworth* v. *State,* 263 Ark. 549, 566 S.W. 2d 151. We do not see anything which would prevent appellant from pleading this conviction in bar of a later prosecution for his participating in the delivery of heroin in this case.

## III

In arguing this point, appellant overlooks (and even failed to abstract) the cross-examination of York by appellant's attorney, just prior to the redirect examination by the prosecuting attorney, during which the questions to which he now objects were asked. Appellant's attorney had asserted in his opening statement that Parker's only participation in the

transaction was to serve as a delivery boy between the police and a man in the Ramada Inn who was the "true seller," and that the state had done nothing to catch the person who had the substance that Parker delivered to the officer. In pursuing this theory, Parker's attorney asked York what attempt he had made to ascertain who was in the Ramada Inn providing the heroin for "these people" to deliver. York responded that he and those assisting him attempted to make "a larger quantity of buy" and were going to attempt to set up "a quantity buy" with a large sum of money in order to "flush them out if someone was there." Upon further questioning, he admitted that this purpose was never accomplished. Parker's attorney then inquired whether the name Vince Tyler meant anything to the officer, whether York had made any attempt to ascertain whether Vince Tyler was involved in the sale of the heroin to him, whether Parker was the only person from whom York had "made a buy" and what other persons had been charged. Objection was made to this question:

> Q. Officer York, you were attempting to explain why you didn't accomplish a big buy, something about a big buy, you were trying to set up a big buy, what was that all about?

After appellant's objection was overruled, York gave the following answer:

> A. We were attempting, like I said, to set up a quantity buy to see if we could flush out anybody that, if there was somebody else involved, at the Ramada Inn, from information that we were trying to gather, without pressuring these subjects that we were buying from and scaring them off from selling to us. We had learned that there may have been something going on. We didn't know for sure. We were trying to set up a possible three or four hundred dollar buy of heroin, through one of these — we didn't have anybody in mind in particular — just someone we were buying from going to the Ramada Inn. This was not accomplished because they couldn't get it set up because they wanted us to front the money, wanted us to give the money and then they would go in and buy the stuff and bring it to us, and we didn't want that because that wouldn't give us a case

against the person, if there was anybody selling any quantity.

No objection was made to later questions and answers which appellant now says were improper, so we do not consider them.

Reply to new matter brought out on cross-examination is the purpose of redirect examination and examination for that purpose is a matter of right, though its extent is subject to control in the trial court's discretion. McCormick on Evidence (2d Ed.), p. 64, § 32. One cannot complain of evidence developed by his adversary on redirect examination about matter injected into the case on cross-examination. *Stovall* v. *State,* 233 Ark. 597, 346 S.W. 2d 212. The scope and extent of redirect examination lie within the sound judicial discretion of the trial judge. A witness should be allowed full opportunity to explain matters brought out on cross-examination or to rebut any discrediting effect they may have had or to correct any wrong impression that may have been created on cross-examination, even though the evidence brought out on redirect examination would not have been admissible on direct examination. *Allen* v. *State,* 260 Ark. 466, 541 S.W. 2d 675. The redirect examination in *Haight* v. *State,* 259 Ark. 478, 533 S.W. 2d 510, relied upon by appellant, was an attempt to bolster the credibility of the witness and not an explanation of matter brought out on cross-examination, so it was beyond the scope of cross-examination. We find no abuse of discretion here.

IV

Appellant requested the following instruction:

You are instructed that the unexplained failure of a party to produce a witness with special knowledge of a transaction, within the power of the party to do so, raised the presumption that the absent witness should testify against the party.

After the conclusion of the testimony of York and another witness who assisted York as an undercover agent, the

prosecuting attorney stated that he elected not to call Bobby Walden, an undercover agent, because his testimony would be cumulative to that of York and Jones. The state rested without calling Jones. Parker's attorney had stated that the instruction set out above should be given, even before the state rested, and the judge then advised appellant's attorney that he would be permitted to call Walden as an adverse witness and to examine him as such. See Ark. Stat. Ann. § 28-1001, Rule 611 (c) (Supp. 1977). Appellant did call Walden as a witness.

There was no error. There was not an unexplained failure by the state to produce this witness. The witness was produced and his identity made known to defense counsel, who subpoenaed him. Where, as here, there is no indication that the testimony of the witness would be anything other than cumulative and the knowledge of the witness is not special, there is no basis for a presumption, or even an inference, that he would testify adversely to the party who did not call him or with whom he is identified. *U.S.* v. *Antonelli Fireworks Co.,* 155 F. 2d 631 (2 Cir., 1946). Cf. *Saliba* v. *Saliba,* 178 Ark. 250, 11 S.W. 2d 774. Any other rule would require a party to call all eyewitnesses to avoid the impact of the presumption. *De Gregorio* v. *U.S.,* 7 F. 2d 295 (2 Cir., 1925). Once the state has produced sufficient evidence to support a finding of guilty, it has no obligation to present further cumulative evidence. *U.S.* v. *Higginbotham,* 451 F. 2d 1283 (8 Cir., 1971). See also, *Corning Bank & Trust Co.* v. *Foster,* 189 Ark. 655, 74 S.W. 2d 797. Furthermore, there is no basis for an unfavorable presumption or inference where the witness is equally available to both parties, particularly when, as here, he is present and has been subpoenaed by the party seeking the benefit of the inference. *Industrial Mutual Indemnity Co.* v. *Perkins,* 81 Ark. 87, 98 S.W. 709; *U.S.* v. *Antonelli,* supra; *U.S.* v. *Higginbotham,* supra. See also, *Corning Bank & Trust Co.* v. *Foster,* supra. We also note that Parker's attorney had, before trial, taken the position that Walden was an indispensable witness for his defense.

Great caution should be exercised in giving an instruction such as that requested by appellant. *Wilson* v. *U.S.,* 352 F. 2d 889 (8 Cir., 1965). The jury instruction requested

would have been improper in this case. *U.S.* v. *Antonelli*, supra; *De Gregorio* v. *U.S.*, supra. Cf. *Henry* v. *Landreth*, 254 Ark. 483, 494 S.W. 2d 114. The failure to give the instruction would not necessarily preclude general argument by counsel as to why some witness was not called to the stand. *Wilson* v. *U.S.*, supra.

V

Appellant called Walden to the witness stand. His attorney examined this witness and established that he had been sitting with York, that the prosecuting attorney had known he was present since his arrival at the courthouse, that the prosecuting attorney had talked to him about the case, that he and York had discussed the facts and circumstances relating to the case against Parker, that he was paid by Crittenden County, that he was present when Parker delivered heroin to York, and that he didn't indicate to the prosecuting attorney that he did not want to be called as a witness, or give any reason why he should not be called.

Appellant's attorney objected that the prosecuting attorney was going beyond the scope of the direct examination when the prosecuting attorney began to question Walden about the nature of his contract with the authorities. The trial judge then cautioned the prosecuting attorney to try to avoid leading the witness but stated that inquiry about the details of the particular transaction would be permitted, with a minimum of leading. No objection to leading questions was made by appellant, so we will not consider the matter on appeal. In any event, there does not appear to have been any abuse of the trial court's discretion.

Appellant's objection about the scope of the cross-examination is not well taken. Generally, the scope of cross-examination has been held to be a matter resting largely within the discretion of the trial judge, whose exercise of that discretion will not be disturbed on appeal in the absence of abuse thereof. *Clark* v. *State*, 246 Ark. 1151, 442 S.W. 2d 225; *Bartley* v. *State*, 210 Ark. 1061, 199 S.W. 2d 965. Under Ark. Stat. Ann. § 28-1001, Rule 611 (b) (Supp. 1977), a trial court may, in the exercise of its discretion, permit inquiry into

matters outside the scope of direct examination. We find no abuse of discretion in this situation.

## VI

During the examination of Gene Bangs, a chemist employed in the Drug Section, State Crime Laboratory, Department of Public Safety, a foil packet was introduced into evidence. Bangs testified that it contained the remains of a substance which had been originally packaged in the foil when he received it for chemical testing. He stated that he had taken a portion of this substance from the foil packet and, after making tests, determined that it was heroin. He said that there was less than one-tenth of a gram of the substance in the packet when he received it.

Appellant does not question the chain of custody between him and the chemist and the evidence established it rather clearly. Appellant's attorney was granted permission to display the contents of the packet to the jury, but when he opened it in the presence of the trial judge and the prosecuting attorney, it was empty. Appellant then moved for a directed verdict, because the absence of the remains of the substance had not been explained. The basis for the motion was that the state had failed to establish the corpus delecti.

There was no error in the denial of this motion. It was not essential to the establishment of the corpus delecti that the substance be introduced in evidence at all. In some situations it might be impossible to do so. For instance, the entire substance might be consumed in making tests. As appellant concedes, we have held that a witness in a criminal case may testify about tangible objects which are the subject of an alleged offense without the object ever being produced. *Washington v. State,* 254 Ark. 121, 491 S.W. 2d 594; *Meyer v. State,* 218 Ark. 440, 236 S.W. 2d 996.

It certainly was not essential to the meeting of the state's burden of proving the corpus delecti on the charge of delivery of a controlled substance that the substance itself be produced in court, if a person qualified to do so had analyzed it and found it to be that on which the charge was based, or if one

suffiently experienced with the substance could give testimony indicating that it was, indeed, that substance. *People* v. *Fernandez,* 131 Cal. App. 2d 565, 280 P. 2d 808 (1955); *People* v. *Partin,* 254 Cal. App. 2d 89, 62 Cal. Rptr. 59 (1967); *Slettvet* v. *State,* 258 Ind. 312, 280 N.E. 2d 806 (1972). Cr. *Sweatt* v. *State,* 251 Ark. 650, 473 S.W. 2d 913.

The disclosure that the packet was empty had a bearing on the credibility of the witnesses and the weight to be given to their testimony, so it would seem that this development would have been advantageous to the appellant and no doubt was the subject of argument to the jury. The disclosure did not operate to obliterate the evidence pertaining to the identity of the substance delivered to York, so there was no error in the denial of the directed verdict.

## VII

During the opening argument to the jury by the deputy prosecuting attorney, appellant objected to the statement that the drug heroin was abundant on the streets of West Memphis, and contends that this was a matter outside the record and unsupported by the evidence. We do not agree. Of course, the prosecution is limited in its argument to the evidence in the record, logical inferences and deductions therefrom and matters of which judicial notice can be taken. *Williams* v. *State,* 259 Ark. 667, 535 S.W. 2d 842; *Long* v. *State,* 260 Ark. 417, 542 S.W. 2d 742; *Dillaha* v. *State,* 257 Ark. 476, 517 S.W. 2d 513. We cannot say that this statement by the state's attorney was totally unsupported by evidence. One of the witnesses who had served as a confidential informer testified that he had found drugs to be easily obtainable in West Memphis. There was testimony by York, some of which was brought out during appellant's cross-examination, that numerous purchases had been made of other persons by him while he was working in West Memphis.

Appellant also objected to the deputy prosecuting attorney's statement that appellant's attorney was going to argue that he was trying to inflame the jurors and added, "Maybe I am because I am inflamed. If you are not inflamed, then something bad is wrong with our system." When ad-

332

monished by the court that he was bordering on trouble and could rephrase the statement, the deputy prosecuting attorney said:

> Maybe I am over zealous in my argument to you today. Maybe the better word is "concerned." I am concerned, and I know some of you have families and children, and you have heard the testimony in this case about the abundance of drugs in West Memphis, and how easy they are to get. Now, i am concerned about it and I hope as each one of you as sitting there that you are concerned about it enough to go back and punish this man severely enough to not only keep him off the streets, to prevent him from getting out here and trafficking in heroin and seeing that people get it so they can take it and shoot up or snort or whatever you do with it, but I am also concerned in setting an example of deterrents to others. *** . . . [W]hen we get an opportunity and we are able to go out and make a case on a man and bring it up here to you in an iron clad open and shut case like we have got today, when he himself admits it, when we are able to make a case like that and bring it up here for you ladies and gentlemen of this jury, citizens of this community, and you all don't do something about it, then I submit to you that we are going to be in bad shape.

The trial judge has a very broad latitude of discretion in supervising and controlling the arguments of counsel and his action is not subject to reversal unless there is manifest gross abuse of that discretion or the matter complained of is a statement of the attorney's opinion made only to arouse passion and prejudice of the jury, and which necessarily has that effect. *Parrott v. State,* 246 Ark. 672, 439 S.W. 2d 924; *Stanley v. State,* 248 Ark. 787, 454 S.W. 2d 72; *Perry v. State,* 255 Ark. 378, 500 S.W. 2d 387; *Willis v. State,* 220 Ark. 965, 251 S.W. 2d 816. Since the offensive language was immediately withdrawn at the court's suggestion and counsel thereafter fully explained his real meaning and no further objection was made, there was no abuse of the trial court's discretion. *Kindle v. State,* 165 Ark. 284, 264 S.W. 856; *Nix v. State,* 124 Ark. 599, 187 S.W. 308; *Setzer v. State,* 110 Ark. 226, 161 S.W. 190;

*Satterwhite* v. *State*, 82 Ark. 64, 100 S.W. 70; *Henshaw* v. *State*, 67 Ark. 365, 55 S.W. 157. It is also significant that the trial judge had instructed the jury that closing arguments of attorneys are not evidence and that arguments having no basis in the evidence should be disregarded. See *Stanley* v. *State*, supra. We do not find the remarks withdrawn and explained to have necessarily aroused the jurors' passion and prejudice.

There was no abuse of the trial court's discretion in the overruling of appellant's objection to the prosecuting attorney's statement that, unlike appellant's attorney, he didn't think he was possessed of the ability to use rhetorical speech making, or in ignoring an objection to the prosecuting attorney's remarks that the defense of the charge was clever, brilliant and smart and that appellant's attorney was a very skilled and very articulate lawyer. In view of the fact that appellant's entire defense was based upon his contention that Tyler was the "true seller" and real culprit in the transactions, there was no abuse of the trial court's discretion in overruling an objection to the prosecuting attorney's statement: "Tyler is not on trial here today. His trial will be some other day." We note that during appellant's cross-examination of York about Tyler, the witness responded that Tyler had been arrested. The prosecuting attorney's statement was a reasonable inference to be drawn from the testimony.

The judgment is affirmed.

We agree. HARRIS, C.J., and HOLT and HICKMAN, JJ.