### EUREKA VINEGAR Co. v. GAZETTE PRINTING Co.

*Circuit Court, E. D. Arkansas.* June 30, 1888.)

1. EVIDENCE—JUDICIAL NOTICE—WORDS OF THE ENGLISH LANGUAGE.
    Courts are bound to take notice of the meaning of words in the English language, and of such matters of common knowledge and science as are or may be known to all men of ordinary understanding and intelligence.
2. INTOXICATING LIQUORS—WHAT ARE—CIDER.
    Cider is an alcoholic beverage, obtained by the fermentation of the juice of apples, and cannot lawfully be sold in a state whose statutes prohibit the sale of "alcohol, or any spirituous, ardent, vinous, malt, or fermented liquors."
    (*Syllabus by the Court.*)

At Law.

Action by the Eureka Vinegar Company against the Gazette Printing Company for publishing the statement that the plaintiff, as the vendor of Old Orchard cider, was amenable to the prohibition laws of the state.

*Frank M. Estes, F. T. Vaughan,* and *W. J. Terry,* for plaintiff.

*John McClure* and *Sanders & Watkins,* for defendant.

CALDWELL, J. The substance of the plaintiff's complaint is that it manufactured for sale, from pure apple juice, a cider known as "Old Orchard Cider;" that this cider could be lawfully sold as a beverage in the prohibition districts in this state, and lawfully sold elsewhere in the state without the payment of the license fee required by law for the sale of liquor; that this cider was introduced into this state and became popular, and that the plaintiff was selling great quantities of it to dealers at a large profit, when the defendant destroyed or very much lessened the trade, and the profits derived from it, by maliciously publishing in its paper the false statement that persons selling the cider were amenable to the liquor laws of the state, and could not lawfully sell such beverage in the prohibition districts at all, nor elsewhere in the state without paying the license fee required of dealers in liquors; that this malicious and false publication deterred its patrons from making further purchases of the cider, and prevented plaintiff from gaining any new customers, and

broke up, or greatly diminished, the sale of the cider in this state, whereby the plaintiff was greatly damaged, etc.

We will put aside, for the present, any discussion of the questions whether this action, on the face of the complaint, is one for libel on the plaintiff in its trade and business, or is an action for damages resulting to the plaintiff from a false statement of the defendant as to the quality and constituents of the cider manufactured by the plaintiff, or both, and, if the latter, whether the plaintiff must allege special damages, and set the same out with particularity.

The statement in the Gazette that the vendors of Old Orchard cider were amenable to the laws of the state regulating the liquor traffic is the marrow of the plaintiff's case. If that statement is true, the plaintiff confessedly has no cause of action. In view of this fact, it is useless to take up the further time of the court with this case. Courts are bound to take notice of the meaning of words in the English language, and of such matters of science as are well known to all men of common understanding and intelligence. *Brown* v. *Piper*, 91 U. S. 42; *Terhune* v. *Phillips*, 99 U. S. 592; *King* v. *Gallun*, 109 U. S. 99, 3 Sup. Ct. Rep. 85; *Ah Kow* v. *Nunan*, 5 Sawy. 560; *Waller* v. *State*, 38 Ark. 656; 1 Whart. Ev. §§ 282, 335. The meaning of the word "cider," its method of production, and its general constituents, are matters of common knowledge, and upon which all books of accepted authority agree. No court would be justified in affecting ignorance of these facts, or in closing its eyes to them, in a case requiring their application. In a popular sense, the term "cider" includes the expressed juice of apples, either fermented or unfermented, and hence the terms "sweet cider" and "hard cider" are in popular use to distinguish between the juice of the apple before and after fermentation. In strictness, the juice of the apple before fermentation is simply apple juice, and it is only by fermentation that it becomes cider; and, when the word "cider" alone is used in law or commerce, it is commonly understood to mean the fermented juice of apples. But there is no pretense that the plaintiff's cider is sweet or unfermented apple juice. The plaintiff's counsel concede that it is what it is stated to be in the circular of the plaintiff appearing in the complaint, viz., "Old Orchard hard cider." What, then, is cider? In the Encyclopædia Britannica, (9th Ed.) tit. "Cider," it is thus defined: "Cider, an alcoholic beverage obtained by the fermentation of the juice of apples." The following are the definitions of other standard authorities: "A fermented liquor made from the juice of apples," (Brande's Encyclopædia of Science, Literature, and Art, tit. "Cider;") "a fermented liquor made from the juice of apples,—formerly used for all kinds of strong liquors except wine," (Worcest. Dict. tit. "Cider.") Mr. Worcester, in his definition of cider, gives its supposed Greek equivalent, and translates it "strong drink;" and in Wyckliffe's translation of the New Testament the passage in Luke i. 15, which in the authorized version reads, "He shall drink neither wine nor strong drink," is translated, "He shall not drink wine nor cider."

What are the constituents of this "fermented liquor?" Alcohol is one. Alcohol is a volatile organic body, constantly formed during the fermen-

tation of the vegetable juices, containing sugar in solution. In popular language, it is the intoxicating principle of fermented liquor. It is exclusively produced by the process of fermentation. Ferment, the substance which is necessary to the process of fermentation, is naturally present in the juice of the apple; and in temperate or warm climates fermentation takes place, and alcohol is generated, until the saccharine matter in the juice is consumed, without the addition of any ferment or other substance. In the process of fermentation forty-five pounds of sugar are resolved into twenty-three of alcohol, and twenty-two of carbonic acid. The equivalent of one pound of alcohol in fluid measure is one pint and about three fluid ounces. Encyclopædia Britannica, tit. "Alcohol and Ferment;" Brande's Encyclopædia of Science, Literature and Art; American Cyclopædia, tit. "Alcohol." The fermentation which generates alcohol from vegetable juices is called "vinous" or "alcoholic."

"The liquids which have undergone it are called ' vinous liquors,' and are of various kinds. Thus the fermented juice of the grape is called ' wine;' of the apple, ' cider;' and the fermented infusion of malt, beer. * * * Alcohol, being the product of the vinous fermentation, necessarily exists in all vinous liquids, and may be obtained from them by distillation." U. S. Dispensatory, (15th Ed.) 140.

The quantity of alcohol in vinous or fermented liquors is variable, but the average per cent. is common knowledge.

"The following is the list of these vinous liquors, together with the percentage of alcohol which they contain, as ascertained by Mr. Brande: Cider, 5.21 to 9.87; Edinburgh ale,. 6.20; brown stout, 6.80; London porter, 4.20; small beer, 1.28. Dr. H. Bence Jones gives the following percentage of alcohol in the under-named liquors: Cider, from 5.4 to 7.5; bitter ale, from 6.6 to 12.3; porter, from 6.5 to 7; brown stout, from 6.5 to 7.9." U. S. Dispensatory, 1530.

The following is an extract from Mr. Brande's table showing the quantity of alcohol in all the liquors known to commerce:

"Cider, highest average, 9.87, lowest, 5.21; Perry, average of four samples, 7.26; mead, 7.32; ale, Burton, 8.88; ale, Edinburgh, 6.20; ale, Dorcester, 5.56; brown stout, 6.80; London porter, average, 4.20; small beer, 1.28." Brande's Encyclopædia of Science, Literature, and Art, tit. "Wine."

According to Wagner's Handbook of Chemical Technology, lager-beer contains from 3.3 to 5 per cent of alcohol.[1] It is useless to multiply ci-

---

[1] The following table, showing the percentage of alcohol in the liquors named, was prepared and published by Dr. John B. Bond, M. D., and late professor of chemistry in the Arkansas Medical College:

| Name. | Per cent. of alcohol by weight. | Remarks. |
| --- | --- | --- |
| Whisky | 44 to 50 | Scotch and Irish 42; American, rarely, 50. |
| Brandy | 37 to 47 | Pure grape, 46. |
| American wines | 8 to 20 | White Concord 8; best California sherry 20. |
| European wines | 9.5 to 18.5 | Champagne, 9.5; best sherry, 18.5. |
| Officinal white wine U. S. P. | 10 to 12 | Should not vary from these limits. |
| Officinal red wine U. S. P. | 10 to 12 | Should not vary from these limits. |
| Cider | 5.2 to 9.9 | "Hard Cider" is still stronger in alcohol. |
| Beer: German lager | 3.3 to 5.1 | Wirtzburg 4; Munich 4.3; Vienna 4.1. |

tations. It is enough to say that the percentage of alcohol in cider, in round numbers, ranges from 5 to 10 per cent., which is a considerable percentage more than is contained in most ale and beer, and some wines. It is not questioned that ale, porter, stout, lager-beer, etc., are within the statutes of the state regulating the liquor traffic, and why should an alcoholic, vinous, or fermented liquor, containing more alcohol than any of these beverages, be exempt? It is not. It is within the very letter of the statute. How completely and effectually the statutes cover cider will appear by reference to their language. In section 1878, Mansf. Dig., prohibiting the sale of liquor to minors, the language is: "Any ardent, vinous, malt, or fermented liquor;" in the license act, section 4507, "Alcohol or any spirituous, ardent, vinous, malt, or fermented liquors;" and in the county local option act, section 4513, "Vinous, ardent, malt, or fermented liquors."

There is a wide difference between the language of the early statutes, which imposed a tax on the liquor traffic for revenue only, and the present statutes of this state, which have for their chief object the total or partial suppression of the evils resulting from the sale of all beverages containing alcohol in an appreciable quantity. Statutes designed to raise revenue only, are usually limited in their operation to those liquors which enter most largely into commerce, and of which the consumption is the greatest. Such statutes do not commonly embrace those domestic fermented liquors, which are produced in limited quantities, and have little commercial value as long as all other kinds of liquor are to be had in the market. The federal license tax, which is imposed for revenue only, is limited to distilled spirits, wine, and malt liquors; and some of the earlier revenue statutes of the states were restricted in their operation to "brandy, whisky, or other distilled spirits," or "brandy, whisky, or other intoxicating liquor." It was contended, and sometimes so decided, that malt, vinous, and fermented liquors, such as beer, cider, and wine, were not within the purview of these statutes. But the statutes of this state leave no room for such contention. Their enactment was largely inspired by moral considerations, and they are designed to suppress or diminish the vices and evils flowing from the sale of any and all kinds of alcoholic beverages. It was foreseen that the prohibition and high license statutes of the state would be fruitful of schemes and devices of all kinds to evade them. See, on this subject, *U. S.* v. *Stafford,* 20 Fed. Rep. 720. It was obvious that, if a single beverage containing alcohol was omitted from the statutes, that that beverage, however sparingly produced or little considered, while other and better or stronger liquors could be had, would speedily take the place of the banished liquors, and result in a practical re-establishment of the liquor traffic. To prevent this, the legislature, by a comprehensive and all-embracing provision, brought within the statutes "alcohol, or any spirituous, ardent, vinous, malt, or fermented liquors." Every beverage of which alcohol is a constituent part necessarily falls under one of these heads. All the processes for the production of all kinds of liquors are enumerated; and all the products of these processes are within the statutes, without re-

gard to the quantity of alcohol they contain, or the names they bear. If any one of these products is to be excepted from the operation of the statutes, it must be done by the legislature. Thus far the only exception made by the legislature is a qualified one in favor of wine; the courts cannot add another.

I have looked with some care through a great many special acts of prohibition, and have not found one under which an alcoholic, vinous, fermented, or intoxicating liquor can be lawfully sold as a beverage: The result is that there is not a spot in the state where this cider can enjoy immunity from the operation of the liquor laws. All the acts include alcoholic, vinous, and fermented liquor, and cider falls under all of these heads. It is also an intoxicating liquor, for it is common knowledge that a fermented beverage which contains from 5 to 10 per cent. of alcohol, which is freely drunk by the glassful, will produce intoxication. This is a fact of daily observation in communities where such beverages are sold. Whisky contains from 40 to 50 per cent. of alcohol, and cider contains one-fifth as much alcohol as whisky, so that drinking a pint of cider is equivalent to drinking one-fifth of a pint of whisky. But to bring it under the operation of the liquor laws of the state it is not essential that it should be an intoxicating liquor. It is enough that it is a "vinous or fermented liquor."

In Waller v. State, 38 Ark. 656, the indictment charged the defendant with "the sale of one pint of beer, malt and fermented liquor." On the trial the state did not prove that beer was a malt or fermented liquor, or that it was intoxicating. The defendant was convicted, and the supreme court affirmed the conviction, saying: "It was not proved that the lagerbeer sold to the minor was malt and fermented liquor; but the court treated this as matter of common knowledge." The question whether lager-beer was intoxicating, was not alluded to, because by the statute (section 1878, Mansf. Dig.) the offense was complete by the sale of malt or fermented liquor without regard to its intoxicating properties. The tables show that the average percentage of alcohol contained in cider is about double that contained in lager-beer.

In about two-thirds of the state, under the operation of local option laws and special acts of prohibition, the sale of liquor is prohibited. The statement is made in the plaintiff's circular, appearing in the complaint, that, "We sell it (Old Orchard cider) in all the prohibition country." It seems incredible that such an open and palpable violation of the laws of the state should have gone on unchallenged for a single day. That the plaintiff was able to make any sales is probably due to the seductive and apparently innocent name of the beverage. If it had been labeled what in law and in fact it is, an alcoholic, vinous, fermented, and intoxicating liquor, it is not likely that a single barrel could have been sold. It is not true that there is nothing in a name; there is often much in it that is misleading.

The sale of this cider, in prohibition districts, was in violation of law, and inflicted the evils of the liquor traffic on communities against their expressed will. Its sale outside of the limits of such districts, by un-

licensed dealers, was in violation of law, and an evasion of the large license tax imposed on liquor dealers, varying from $600 to $1,000, and was, an injustice to those liquor dealers who honestly paid their license tax. These facts would have justified the use by the defendant of much more vigorous and earnest language than any that is found in the articles complained of. It is the duty of the press to fearlessly expose a traffic in violation of law, or prejudicial to the public morals, or which seeks to evade the revenue laws of the state.

The plaintiff suffered a nonsuit.