MEYER *v*. STATE.

4648                                        236 S. W. 2d 996

Opinion delivered February 26, 1951.

Rehearing denied March 26, 1951.

*Franklin Wilder,* for appellant.

*Ike Murry,* Attorney General, and *Jeff Duty,* Assistant Attorney General, for appellee.

ROBINSON, J. The appellants were charged in seven separate informations with the violation of § 82-902, Ark. Stats. The cases were consolidated and tried together. Specifically, the defendants were charged with: first, possessing for the purpose of sale adulterated bologna; second, manufacturing adulterated bologna; third, possessing for the purpose of sale adulterated hamburger; fourth, manufacturing adulterated hamburger; fifth, possessing for the purpose of sale adulterated wieners; sixth, manufacturing adulterated wieners; seventh, possessing for the purpose of sale adulterated horsemeat. They were convicted of the first six charges and acquitted of the seventh. Section 82-902, Ark. Stats., is as follows:

"It shall be unlawful for any person to manufacture, sell, offer for sale, or have in possession for the purpose of sale within the State any article of food or drug which is adulterated or misbranded within the meaning of this Act. . . .". (Sections 82-902—82-910).

The alleged grounds for reversal are as follows: first, the Court's refusal to grant a change of venue; second, the Court's instruction defining, as a matter of law, the meaning of bologna, wieners and hamburger; third, the fact that the defendants were prosecuted in the Circuit Court before they had been granted a hearing before a Health Officer; fourth, the Court's refusal to grant a continuance; fifth, the failure of the prosecution to introduce in evidence the samples of meat products which witnesses for the State had examined, and upon which they based their testimony that it was horsemeat; sixth, that the possession for sale is a necessary in-

gredient of manufacturing adulterated food in this case and, therefore, a part of the same offense.

The appellants operated the Fort Smith Provision Company. Late in the afternoon of September 15, 1950, Arthur Larimore, Sanitarian for the State of Arkansas assigned to Sebastian County, along with other officers went to the defendants' aforesaid place of business and discovered what one of the officers, who had had experience as a butcher, identified as the carcass of a horse and who testified in detail how the carcass of a cow differed from that of a horse. A local veterinarian was also called in to examine the carcass and he pronounced it as being that of a horse. A sample of this meat was cut from a hind quarter and the officers obtained from a walk-in cooler samples of wieners, bologna and hamburger. These samples were sent to the Federal Security Agency, Washington, D. C., for the purpose of proving the kind of meat in the various samples, the samples being numbered so that they could be properly identified.

Otto Meyer denied to the officers that the carcass was that of a horse, but stated it was from a big Holstein cow, and that the hide had been left in a pasture where they had butchered, and he gave the officers the location of this pasture. The officers went there but found no cow hide and no evidence of a cow having been butchered, but they did find evidence of the fact that numerous horses had been butchered. The government experts in Washington, D. C., to whom the samples were sent appeared at the trial and testified that all of the samples were composed of horsemeat.

As to appellants' contention that the Circuit Court erred in not granting a change of venue, Initiated Act No. 3 broadened the Circuit Court's power in this regard as we held in the case of Bailey v. State, 204 Ark. 376, 163 S. W. 2d 141, and in the case of Robertson v. State, 212 Ark. 301, 206 S. W. 2d 748. Before the trial Court's action in refusing to grant a change of venue will be reversed by this Court, it must appear that there was an abuse of judicial discretion on the part of the trial

court, and we cannot say there was such an abuse of discretion in this case. Appellants produced in Circuit Court several witnesses, in addition to evidence of articles and pictures in newspapers, and evidence as to the circulation of the newspapers, but the witnesses knowledge of any feeling in the county against the defendants was very limited, and the articles and pictures in the newspapers were no more than is the custom and practice of newspapers. It was just a plain case of reporting the news and it does not appear that there was a studied effort or plan to build up public feeling and prejudice against the defendants.

Appellants moved for a continuance on the ground that their attorney who was to try the case had only been employed a few days, and that they had not had sufficient time to prepare for trial. Appellants were arrested on the 15th day of September, 1950. The Prosecuting Attorney subscribed and swore to the informations before the Circuit Clerk on September 21, and bench warrants were issued September 22nd. Defendants, by their attorneys, filed a Motion to Dismiss on September 26th. A Motion for a Bill of Particulars was filed and granted on September 26th, and the Bill of Particulars filed on September 28th, and then it appears that appellants changed attorneys. On October 2nd, the new attorney filed a Motion for a Change of Venue, which was overruled by the Court, and on October 5th he filed the Motion for a Continuance, which was overruled, and the case thereupon proceeded to trial that day.

The appellants had about three weeks to get ready for trial. This Court has held in a long line of decisions that Motions for Continuances are addressed to the sound judicial discretion of the trial court and a reversal can be had only where it is shown by the record that a refusal to grant a continuance was an arbitrary abuse of discretion. *Morris* v. *State,* 197 Ark. 778, 126 S. W. 2d 93; *Smith* v. *State,* 200 Ark. 1152, 143 S. W. 2d 190; *Collier* v. *State,* 202 Ark. 939, 154 S. W. 2d 569. The fact that the lawyer, who actually tried the case had

been employed only a few days, although other counsel had been representing the appellants from the first, is not sufficient to call for a reversal of the case. *Hamilton* v. *State,* 62 Ark. 543, 36 S. W. 1054; *Therman* v. *State,* 205 Ark. 376, 168 S. W. 2d 833.

Next, appellants contend that they could not be legally prosecuted in Circuit Court until such time as they were granted a hearing before the Health Officer. We do not so construe § 82-905. According to the appellants' construction of the statute, no one could ever be prosecuted for violation of the statute before a Health Officer took action, regardless of the fact that some Health Officer might be derelict in his duty of bringing the violator to account. Section 82-906 provides:

"It shall be the duty of each Prosecuting Attorney to whom the State Health Officer shall report the violation of this Act, *or to whom any Health or Food or Drug Officer or Agent of the State Board of Health shall present satisfactory evidence of any such violation,* to cause appropriate proceedings to be commenced and prosecuted in the proper courts of the State, without delay, for the enforcement of the penalties as in such case herein provided."

Thus, even if the Prosecuting Attorney had to have a report from a State Health Officer or Agent of the State Board of Health before he could act (which we do not hold), he had a report from Mr. Larimore, the State Sanitarian.

The court told the jury as a matter of law that "bologna" means a "seasoned sausage prepared from the flesh of cattle, sheep, swine or goats"; that the word "wiener" or "frankfurter" means a "sausage prepared from the flesh of cattle, sheep, swine or goats"; and that the word "hamburger" or "hamburger steak" means "a mixture of ground or chopped beef and seasoning". These definitions are given in Webster's International Dictionary, 2nd Edition. The courts will take judicial knowledge of the meaning of the words in the English language, *Eureka Vinegar Company* v. *Gazette*

*Publishing Company,* 35 Fed. 570, and our Courts will take judicial knowledge that bologna, hamburger and wieners are food products prepared from the meats named in the dictionary, and not from horsemeat. We know bologna is a seasoned sausage prepared from the flesh of cattle, sheep, swine or goats, just as we know beef is the flesh of a bull, an ox, or a cow, because the dictionary says so.

"The meaning of English words and phrases is within the judicial knowledge of the Court." (20 Am. Jur. 89). When horsemeat is used in the manufacture of the well-known and widely used products recognized in the English language as hamburger, bologna, wieners, and frankfurters, such products are adulterated within the meaning of our statute, unless of course, the product was openly held out to be horsemeat. There is no contention that such is the case here. The evidence proving that the defendants manufactured and possessed for sale bologna, wieners and hamburger adulterated with horsemeat is overwhelming.

The failure of the prosecution to introduce samples of the meat obtained when appellants were arrested is next assigned as error. There is no merit to this contention. "The testimony of the witness who has obtained, by the employment of any of his senses, personal knowledge of the physical condition or attributes of an article of personal property is primary evidence of its character and condition. . . . A witness may testify that oleomargine which is alleged to have been illegally sold resembled butter without producing the article sold or explaining its nonproduction. . . .

"The best evidence rule deals with writings alone, not with objects, and the fact that exhibition of such objects to the jury would more clearly and forcefully explain their nature, appearance or condition, is not a valid objection to oral evidence concerning such matters." Underhill's Criminal Evidence, 4th Edition, 145-6.

It is argued that there is no evidence upon which can be based the conviction of Otto Meyer, Jr. Frankly,

in this respect we have carefully explored the record in an effort to sustain this contention, as the son may have been dominated by the father, but the evidence of the guilt of the son is just as positive as that of the father, and there is no evidence that he is of such tender years as to render him not legally responsible for his acts, or to raise a presumption that makes it the duty of the State to prove his mental capacity. (In fact, there is no evidence in the record that he is a minor, but it is suggested in appellants' brief.)

Before going into the trial of the case, appellants filed Motions to Dismiss those cases charging "possessing for sale" on the grounds that that particular charge is a necessary element of the offense of manufacturing adulterated food, and that, therefore, appellants were being tried twice for the same offense. This brings us to a consideration of just what is meant by manufacturing food which is adulterated. Webster's International Dictionary says, "adulterated" means "to corrupt, debase, or make impure by an admixture of a foreign or a baser substance". It is not a violation of the law to manufacture meat products from horsemeat; nor is it a violation of the law to sell products manufactured from horsemeat, or to possess for sale such articles. But, it becomes a violation of the law when adulteration takes place. Adulteration occurs at the time when the article is possessed for sale as the genuine product although it actually contains baser substances. One could manufacture for his own use what appeared to be an ordinary wiener made of beef, pork or mutton but which, in fact, contained horsemeat and it would not be an adulterated product within the meaning of the Statute. So, in the case at bar, the defendants had to possess the bologna, hamburger, and wieners for the purpose of sale, although they had manufactured such products, before they would be guilty of manufacturing adulterated food, as possessing it for sale or selling it while representing it, directly or indirectly, to be something else than what it is, implements the adulteration within the meaning of the Statute.

The situation in this case differs from the manufacture of whiskey and possession of same for the simple reason that, under the statutes making it illegal to manufacture whiskey, it is against the law to make it for one's own use or to give it away, although there is no fraudulent representation as to what it is.

Possessing the imitation bologna, wieners, or hamburger for sale is a necessary ingredient of the offense of manufacturing adulterated food in this case, and, therefore, the defendants could not be convicted on both charges. *Fox* v. *State,* 50 Ark. 528, 8 S. W. 836. Appellants' Motions to Dismiss for this reason should have been granted.

Cases Nos. 1873, 1877 and 1878 are reversed and dismissed. Cases Nos. 1874, 1875 and 1876 are affirmed.

HOLT, J., not participating.