**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Stanley C. WILLIAMS, Defendant-Appellant.**

**No. 81CA0657.**

Colorado Court of Appeals, Div. II.

May 20, 1982.

Rehearing Denied July 1, 1982.

Certiorari Denied Nov. 15, 1982.

320

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Susan P. Mele Sernovitz, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Zuckerman & Kleinman, P.C., Leo T. Zuckerman, Michael J. Kleinman, Denver, for defendant-appellant.

BERMAN, Judge.

Defendant, Stanley C. Williams, appeals his conviction after a trial to the court on two counts of receipt of stolen goods. We affirm.

The record discloses the following undisputed facts. Law enforcement agents in Arapahoe County received a telephone call from the defendant's wife that the defendant was dealing in stolen goods. Upon receiving this information, a member of the Special Crime Attack Team (SCAT) contacted the Denver police anti-fencing unit and was informed by a Detective Tabares that he had sold the defendant allegedly stolen goods on two previous occasions. Detective Tabares then arranged a meeting between the defendant and Detective Kalutkiewicz of the Arapahoe SCAT team, with the officers acting as undercover agents.

On February 29, 1980, the three men met at a restaurant in Arapahoe County. At that time, Kalutkiewicz informed the defendant that he had some stolen property, and he asked defendant if he would be interested in it. The defendant wanted to see the property and, according to the testimony of the officer, suggested a place two blocks north of the restaurant in order to view the property and exchange it. The reason for the change of location, the officer testified, was that the defendant was afraid that the manager of the restaurant might be suspicious of them and write down the license numbers to their cars.

An agreement was made between Kalutkiewicz and the defendant in which the defendant paid $275 for an 8-track AM–FM stereo set and a 19″ color portable television set. At that time, Kalutkiewicz asked the defendant if he would be interested in purchasing other property and the defendant indicated that he would. Detective Tabares was to make the arrangements.

A subsequent meeting was set up for March 11th but the defendant did not show up on that date. Kalutkiewicz then called the defendant at his place of business and made arrangements for a second meeting, which after a number of phone calls back and forth, occurred at the same restaurant on March 17, 1980. Using the same procedure, Kalutkiewicz sold the defendant a 13″ color portable television set for $125. Again the detective informed the defendant that the set was stolen. After the money and merchandise had been exchanged, Kalutkiewicz identified himself and the defendant was placed under arrest.

I.

Defendant does not deny that the foregoing described incidents occurred, but instead claims that he was entrapped by the police officer, and contends the trial court erred when it denied his motion for judgment of acquittal based upon this defense. We disagree.

Entrapment is defined as follows:

"The commission of acts which would otherwise constitute an offense is not criminal if the defendant engaged in the

proscribed conduct because he was induced to do so by a law enforcement official or other person acting under his direction, seeking to obtain evidence for the purpose of prosecution, and the methods used to obtain that evidence were such as to create a substantial risk that the acts would be committed by a person who, but for such inducement, would not have conceived of or engaged in conduct of the sort induced. Merely affording a person an opportunity to commit an offense is not entrapment even though representations or inducements calculated to overcome the offender's fear of detection are used."

Section 18–1–709, C.R.S.1973 (1978 Repl. Vol. 8).

In determining whether the affirmative defense of entrapment exists, the court focuses on the conduct of the defendant. In a theft by receiving prosecution, an examination is made of the circumstances surrounding the sale to see whether the officers merely afforded the defendant the opportunity to commit the theft or whether the defendant had been improperly induced to do something he otherwise would not have done. *Mora v. People,* 172 Colo. 261, 472 P.2d 142 (1970); *People v. Sanchez,* 40 Colo.App. 552, 580 P.2d 1270 (1978). It is permissible for the government to initiate the contact, as was done here. *People v. Ross,* 182 Colo. 267, 512 P.2d 1154 (1973). Also, a significant factor here in determining that the defendant was not entrapped is his expressed willingness to make additional purchases. *See Sanchez, supra.*

In its findings on the issue of entrapment, the trial court stated:

"The Court further finds from the evidence about the telephone call from the defendant's wife, and the confidential informant or reliable informant, that the defendant was involved in buying stolen merchandise prior to the time that he purchased these items from the undercover officers, and the Court finds and concludes that the defendant had a predisposition to purchase stolen goods prior to any actions taken by the officers who have testified in this case."

The trial court had previously admitted this hearsay testimony into evidence for the limited purposes of showing the "intent" of the detectives. Defendant argues that since this was the only evidence demonstrating the defendant's "predisposition," there was insufficient evidence to establish beyond a reasonable doubt that there was a predisposition to commit the offense on the part of the defendant.

The defendant, however, misconstrues the defense of entrapment. The prosecution must prove beyond a reasonable doubt that the defendant was not entrapped. *People v. Sanchez, supra.* Here, as discussed above, there was ample evidence to show that the defendant willingly and readily accepted what he believed to be stolen goods; the detectives merely afforded him the opportunity to commit the crime.

## II.

The defendant was found guilty of two counts of theft by receiving of goods with a value over $200 but less than $10,000. Section 18–4–410(1), (4), C.R.S.1973 (1978 Repl.Vol. 8). The defendant contends that the prosecution did not meet its burden of proof in establishing the market value of the allegedly stolen goods on the date of the offense. *See People v. Elkhatib,* 198 Colo. 287, 599 P.2d 897 (1979). We conclude there was sufficient evidence to establish the requisite value.

Here, the defendant was charged with two separate counts of receiving stolen goods; thus, the $200 minimum must be established for each offense. The first offense involved the sale of a television and a stereo for which the defendant paid $275. The second offense involved a television set for which the defendant paid $125.

Two expert witnesses testified at trial. They opined that, with regard to the items involved in the first offense, the AM–FM stereo, in good condition, had a fair market value of $299 and the 19″ television had a fair market value of $350, and the 13″ television involved in the second offense had a fair market value of $250. On cross-examination, one of the experts stated that the value of the merchandise should be re-

duced by 10% because they had been taken out of their boxes and were similar to floor models.

Also, Kalutkiewicz testified that the merchandise was bought specifically for the SCAT anti-fencing operations. He testified that the televisions were brand new and still in the manufacturers' boxes and that the stereo set was brand new but not in the manufacturer's box. He further testified that he had tested the goods to see if they were in operating condition. The sole exception to his testing was the 8-track tape of the stereo.

It is this combination of the testimony of the expert witnesses and the police officer which distinguishes this case from *People v. Williams* (Colo.App. No. 81CA0326, December 17, 1981) (not selected for official publication), a case involving the same defendant in which we found that the value of the goods in question had not been established. In that case there was "no testimony as to the condition of the set or that it was even operative." Furthermore, as to the first offense, the unrefuted testimony of Kalutkiewicz that the defendant paid him $275 alone is sufficient to establish the fair market value, *i.e.*, a "'stolen goods market'" value. *Burns v. People,* 148 Colo. 245, 365 P.2d 698 (1961).

### III.

■ The defendant also argues that the trial court erred in admitting the expert testimony because the experts had not personally examined the merchandise and that photographs of the goods were admitted, instead of the goods themselves. We disagree.

■ It is permissible for expert witnesses to base their opinions upon facts "made known to [them] at or before the hearing." Colorado Rules of Evidence 703. Here, in addition to the photographs, there was the testimony of the detective (Kalutkiewicz) that the items in question were unused and in good working condition. In response to hypotheticals based upon this testimony and their examination of the photographs, the two experts were able to determine an approximate year of manufacture for the goods and based upon their experience in dealing with goods of this type they were able to ascertain a fair market value.

■ Likewise, we disagree with defendant's contention that the use of photographs, rather than producing the goods, violated the "best evidence rule." There is not a broad, general rule of best evidence which applies to physical evidence. Instead, in modern practice, the rule is limited to requiring the production of the original writing when documents are submitted into evidence. *U.S. v. Duffy,* 454 F.2d 809 (9th Cir.1972); *Chandler v. U.S.,* 318 F.2d 356 (10th Cir.1963); *Meyer v. State,* 218 Ark. 440, 236 S.W.2d 996 (1951). *See also* McCormick on Evidence § 229 (E. Cleary 2d ed. 1972); Colorado Rules of Evidence 1002, 1003. The only instance in which the rule is applicable to photographs is when the content of the photographs is to be proved. *See* Colorado Rules of Evidence 1002; *U.S. v. Levine,* 546 F.2d 658 (5th Cir.1977) (construing similar federal rule). *See also* Paradis, *The Celluloid Witness,* 37 U.Colo.L. Rev. 235 (1964–65).

■ Here, the defendant stipulated as to the authenticity and the relevancy of the photographs. The fact that the photographs were used instead of the items in question goes to the weight of the evidence, not its admissibility. *See People v. Atencio,* 193 Colo. 184, 565 P.2d 921 (1977). The admissibility of evidence is a matter within the trial court's discretion; we find no abuse here. *Maes v. People,* 169 Colo. 200, 454 P.2d 792 (1969). *See also U.S. v. Mundt,* 508 F.2d 904 (10th Cir.1974), *cert. denied,* 421 U.S. 949, 95 S.Ct. 1682, 44 L.Ed.2d 103 (1975) (if authenticity or the relevancy of the items depicted in the photographs is not at issue, admission into evidence of the photographs thereof is at the court's discretion).

### IV.

■ Defendant's final contention—that the prosecution for this action placed the defendant in double jeopardy—is without merit. Here the defendant committed four distinct offenses. On January 2, 1980, and February 22, 1980, he received allegedly stolen goods from Detective Tabares in

Denver County; for these offenses he was tried and convicted in that jurisdiction. The transactions in Arapahoe County occurred on February 29 and March 17, 1980. "A distinct repetition of a prohibited act, even on the same day, may constitute a second offense and incur an additional penalty." *Bustamante v. People,* 136 Colo. 362, 317 P.2d 885 (1957). Likewise, § 18–1–408, C.R.S.1973 (1978 Repl.Vol. 8) mandating joinder of offenses is inapplicable here. A critical element of that statute, which is lacking here, is that the several offenses be committed in the same jurisdiction. *Jeffrey v. District Court,* Colo., 626 P.2d 631 (1981).

Judgment affirmed.

PIERCE and TURSI, JJ., concur.