**Woodrow WILSON, Appellant,**

**v.**

**UNITED STATES of America,**
**Appellee.**

**No. 17917.**

United States Court of Appeals
Eighth Circuit.

Nov. 15, 1965.

Rehearing Denied Dec. 30, 1965.

Raymond A. Bruntrager, of Stewart & Bruntrager, St. Louis, Mo., for appellant.

Stephen H. Gilmore, Asst. U. S. Atty., St. Louis, Mo., made argument for appellee and filed brief with Richard D. Fitz-Gibbon, Jr., U. S. Atty., St. Louis, Mo.

Before JOHNSEN, VOGEL and MATTHES, Circuit Judges.

JOHNSEN, Circuit Judge.

This is a companion case to Keeble v. United States, 8 Cir., 347 F.2d 951. Both cases represent convictions for perjury, which had been engaged in by two local union officials, upon the same testimonial element, in a hearing before a Trial Examiner of the National Labor Relations Board, on a complaint filed by a contractor against the Union for unfair labor practices.

Keeble was secretary-treasurer of the Union, and Wilson, the present appellant, was president thereof. The convictions were had on separate indictments and trials, before different juries and trial judges. Both defendants were given a sentence of thirty months imprisonment. The judgment against Keeble has been affirmed previously, and we now affirm that against Wilson.

The complaint which was involved had been filed by a contractor named Langston, from Selma, Arkansas, in relation to a contract-operation by him of clearing the right-of-way for a power line erection near Ellington, Missouri. A crew of nonunion men had been brought in by him from Arkansas, and he had hired some others in the Ellington area. Wilson and Keeble began efforts to organize the workmen.

Early one morning, there was an assault by a group of men upon Langston's workmen at the place where the clearing activities were then being carried on. The group of assaulters had assembled at a wayside park outside of Ellington and then driven down the highway a few miles to where the workmen were. Wilson and Keeble were identified by eyewitnesses as having been at the park while the group was assembling and at the scene of the assault while it was being perpetrated. The perjury charges grew out of the testimony by each of them before the Trial Examiner that they had not been at the alleged assembling place or at the scene of the attack, but that during all of the time when these events were claimed to have occurred, they were both at the Taum Sauk project, some 50 miles away.

At the perjury trial, in addition to the direct testimony produced by the Government as to their presence at the park and at the place of assault, there was offered and received in evidence a "Visitors Log" maintained at the Taum Sauk Project, which indicated that the two of them had been admitted to the project area on that date at 10:40 a. m., which was an hour and a half or more after the time of the assault.

The principal contention urged for reversal is that it was error to permit the log to be received in evidence. The arguments made are similar to those which were before the panel which heard the Keeble appeal, and they have been sufficiently considered and answered in that opinion, 347 F.2d at 953–954. There is no need to engage in a repetition of them here. We adhere to and reaffirm the ruling there made as to the admissibility of the log and the basis on which it was predicated. As there declared, the log as maintained was sufficiently within the scope of 28 U.S.C.A. § 1732(a) to have admissibility as a business record, and the aspects of challenge made to it are, within the language of the statute, " * * * circumstances * * * [which] may be shown to affect its weight, but * * * shall not affect its admissibility". See also La Porte v.

United States, 9 Cir., 300 F.2d 878, 880, footnote 8.

■ The only other contention urged for reversal is that some prejudicial comments were made by the court.

In his argument to the jury, appellant's counsel called attention to the fact that the witnesses who had testified to Wilson's and Keeble's presence at the assault represented only a small number of Langston's crew of workmen. He argued that, if Wilson and Keeble had in fact been present, "these other men would have seen them". To crystalize his argument, he asked: "Where are these other fellows from Arkansas, from his home town? * * * why didn't they bring them in?"

In making reply, Government counsel stated in his closing argument: "The witnesses I have, or the witnesses that were brought before you, are the ones I have. This is what we have got". Appellant's counsel immediately interrupted:

"Your Honor, I am going to object to that. There are these thirty other people that are purported to have seen them. There is no showing that this is all they had. This is what they brought in. And it is not fair to say that this is all they had because they had plenty more".

The court engaged in the observation that "I am quite sure it is all they have got or they would certainly have them here". Appellant's counsel thereupon made objection to the remark as not "based on any evidence" and as being "prejudicial" and requested that the jury be instructed to disregard it. The court then turned to the jury and terminated the incident with the following oral instruction:

"Gentlemen, you have heard the testimony, and you have heard the witnesses. Remember what the lawyers say is not evidence. And remember anything the Court may say has nothing to do with what the facts are. That is for you to determine.

Whether the Government could or could not have brought in other witnesses, you will remember what the testimony is in that regard".

Appellant argues that the instruction only compounded the evil of the court's initial observation, because while it told the jury that it was for them to determine the facts, the direction that "you will remember what the testimony is in that regard" implied and could only impress—as the brief puts it—that "somewhere in the testimony there was a basis for the court's statement".

A reading of the instruction in its whole leaves this as purely an artificial maze. The instruction made clear to the jury that what the lawyers said was not evidence; that anything the court said had nothing to do with what the facts were; that they had heard the testimony and the witnesses; and that it was upon this basis that they were to determine what the facts were. This general direction was then given application to the specific question of "[w]hether the Government could or could not have brought in other witnesses" by repeating the admonition in relation to it that "you will remember what the testimony is in that regard".

That such reasonably was the effect and understanding which would be conveyed by the instruction is attested by the fact that appellant's counsel so treated and accepted it both at the time and subsequently in connection with the court's charge. No challenge, claim of confusion, request for amplification, or exception was engaged in either upon the giving of the cautionary instruction or later upon the delivery of the general charge. As a matter of fact, in its general charge the court took occasion to again emphasize that it had had no intention at any time to express an opinion upon any of the facts of the situation, and that if, during the trial, the jury had gotten the impression that it was in any manner indicating "any opinion upon what is or is not a fact in this case",

they were "at perfect liberty to disregard anything of the sort".

With all of this, there could be left no possible basis for a general claim of prejudicial error—much less any substance for a claim of "plain error", noticeable under Rule 52(b) Fed.Rules of Crim.Procedure, 18 U.S.C.A., (on which any contentiion here would have had to be predicated in view of the lack of challenge made to either the court's cautionary instruction or its general charge).

We should perhaps add that we intend no implication on whether the court's voicing of belief that the Government had produced all the witnesses it had on the question of appellant's presence at the assault would have constituted prejudicial error if it had not made clear by its cautionary instruction or its charge that the expression was without intended significance or effect. For there to be prejudice, it would seem that the situation would in any event have had to be one in which there was such basis to view a failure to produce witnesses as having existed that appellant would upon request have been legally entitled to an instruction on the presumption which could be engaged in in this regard. Whether the situation here was sufficiently of that character the court was not called upon to determine, nor is it before us, for no request for such a presumption instruction was made.

 We have in other cases said that the rule of presumption from failure to produce witnesses is one which is to be applied with caution, Shoenberg v. Commissioner of Internal Revenue, 8 Cir., 302 F.2d 416, 420; that it is not one which is abstractly entitled to be given application; but that it is to be accorded opportunity for significance and effect only when there has been shown a factual area in which it can logically operate, Jenkins v. Bierschenk, 8 Cir., 333 F.2d 421, 425.

These cautions have application to requests made for an instruction. They do not, of course, prevent the court from allowing free scope for mere traditional general argument by counsel as to why some witness or witnesses have not been called to the stand. But these are matters which are not directly before us and therefore require no further discussion.

No error is shown to have been involved in appellant's trial, and the judgment of conviction is accordingly not entitled to reversal.

Affirmed.