Gordon L. ANDERSON, Appellant,

v.

UNITED STATES of America, Appellee.

No. 18306.

United States Court of Appeals Eighth Circuit.

Dec. 2, 1966.

Rehearing Denied Dec. 19, 1966.

**12**

Ronald L. Haskvitz, Minneapolis, Minn., for appellant.

Sidney P. Abramson, Asst. U. S. Atty., Minneapolis, Minn., for appellee. Patrick J. Foley, U. S. Atty., was with him on brief.

Before VOGEL, Chief Judge, and VAN OOSTERHOUT and LAY, Circuit Judges.

VOGEL, Chief Judge.

Defendant-appellant, Gordon L. Anderson, was charged in a 5-count indictment with mail fraud in violation of 18 U.S.C.A. § 1341. At the conclusion of a jury trial he was found guilty on all five counts of the indictment and was given a general sentence of five years in prison. The trial court denied motions to dismiss and for a new trial. Defendant appeals from the judgment of conviction, claiming six grounds of error entitle him to reversal: (1) Insufficiency of evidence; (2) the denial of defendant's motion to dismiss Count No. 5; (3) the denial of due process through the prosecutor's improper reference to a prior indictment; (4) the improper exclusion of evidence; (5) the trial court's improper comment upon some evidence; and (6) the denial of a motion for new trial based upon newly discovered evidence. We affirm.

I. *Insufficiency of the evidence.* The general rule must again be recognized that all evidence is to be viewed in a light most favorable to the government as the prevailing party and all reasonable inferences must similarly be resolved in its favor. Koolish v. United States, 8 Cir., 1965, 340 F.2d 513, 519, cert. denied, 381 U.S. 951, 85 S.Ct. 1805, 14 L.Ed.2d 724; Smith v. United States, 8 Cir., 1964, 331 F.2d 265, 278, cert. denied, 379 U.S. 824, 85 S.Ct. 49, 13 L.Ed. 2d 34, rehearing denied, 379 U.S. 940, 85 S.Ct. 321, 13 L.Ed.2d 350. Appellant's argument that the evidence was insufficient to sustain the verdict is essentially two-pronged in scope. In the first place, he insists that it was necessary for the government to prove beyond a reasonable doubt that National Tobacco Company, hereinafter referred to as National, was owned and controlled by appellant. The second claim is that the government must prove beyond a reasonable doubt that appellant intended to devise a scheme to defraud. From an examination of the evidence and a thorough review of an extensive transcript it is clear that the jury could and did reasonably find (a) that National was controlled by appellant and (b) that appellant intended to devise a scheme to defraud.

Gordon L. Anderson had, in the years immediately preceding his involvement with National, organized and directed numerous "sales" companies which marketed "business opportunities" and various related products. Prior to the formation of National appellant was doing business as the Allied Tobacco Company, hereinafter referred to as Allied, a company which sold cigar vending machines and furnished cigars on a commission basis to the purchasers of such machines. Allied was dissolved soon after the creation of National. National was formed early in September 1959 to distribute cigar vending machines to people throughout the United States. This business continued in operation until sometime late in 1961. The names of prospective customers were obtained by National through advertisements in local newspapers all over the country. After a prospect's initial response by mail and the completion of a confidential credit form, salesmen were sent out from the Minneapolis office to sell the cigar vending machines and arrange for locations where these machines could be installed. From the evidence it appears that the salesmen were taught by appellant and encouraged to use "high-pressure" sales tactics. They were also told to get certified checks from the purchasers for the total cost of the machines at the time of the original sale so the checks could not be stopped prior to payment. Salesmen received a commission of from 30% to 40% on these sales. From the record it is clear that the sales campaign was directed at persons who had no prior ex-

perience in selling through or servicing vending machines.

Also involved in the management of National was one Wilbert A. Schnabel, who by certain of his actions and representations appeared to be president and sole owner of National but who, as the jury determined, was simply the front man for appellant. Because appellant had previously been involved in many "business opportunity" schemes similar to the one involved in the instant case which had gained for him a rather unsavory reputation, he evidently concluded that National would have a greater possibility of success if he was not its titular head.

The five counts of the indictment in the instant case are based upon letters sent concerning the sale of vending machines to two men, Elmer Bender and Raymond Mosbrucker, in the Bismarck-Mandan, North Dakota area. Both of these men were sold cigar vending machines by one Frank Cooke, a salesman for National who had been trained by appellant and who the jury determined to be under the control of appellant at the time of the sales. The fraudulent misrepresentations upon which the indictment is grounded were made by the salesman and involved false representations concerning exclusive territories for the machine purchasers, time of delivery for the vending machines, potential profits that the vending machine purchasers could reasonably expect, repurchase agreement under which National would repurchase the machines or find another vender to take over the machines if the purchaser wanted out of the business, and finally the procurement by National of good locations to place the machines. The indictment was based upon the totality of the scheme to defraud.

Appellant contended throughout the course of the trial that he owned a company known as Commercial Distributors which was a wholesaler of cigar vending machines and cigars. It was appellant's claim that he and Schnabel had decided that Schnabel would form a retail distributing company, National, which would obtain its vending machines and cigars from Commercial. For this service National would pay appellant, doing business as Commercial, a royalty on the machines and cigars sold. In addition, National was to receive technical assistance from appellant. Appellant claims that pursuant to this agreement National was formed and that at no time did he have a direct financial interest in or exert control over National. Testimony and evidence in the record indicate that:

1. Prior to Schnabel's "formation" of National he was an employee of appellant's company, Allied.

2. Appellant instructed Schnabel that he wanted him to act as president of a company and that he wanted him to register the company name, National Tobacco Company, with the Minneapolis Better Business Bureau.

3. Several salesmen who had worked for Allied immediately began working for National upon its formation.

4. Appellant supplied the funds with which National's first bank account was opened.

5. Appellant's control of National's office routine did not differ markedly from the office decisional control he exercised in the Allied company.

6. Appellant trained all the National salesmen and National salesmen were hired subject to his approval.

7. Appellant received weekly payments from National in the sum of $250 as compared to $150 weekly for Schnabel. Two of the company checkbooks indicated that this was an amount payable for salary.

The record is replete with other pertinent testimony but these significant examples suffice to show appellant's involvement in and control over National. There is, of course, substantial conflict of evidence in the instant case but it is well established that conflicts of evidence are to be resolved by the trier of facts. See, Black v. United States, 8 Cir., 1962, 309 F.2d 331, 341; Cwach v. United States, 8 Cir., 1954, 212 F.2d 520, 527. This the jury did when it convicted ap-

pellant upon all five counts of the indictment.

■ Appellant further claims the evidence was insufficient in that no criminal intent to defraud was shown. In the instant action, as in most mail fraud prosecutions, there are numerous instances of allegedly illicit conduct, all of which need not be proved to sustain a conviction. See, Schaefer v. United States, 8 Cir., 1959, 265 F.2d 750, 753; Holmes v. United States, 8 Cir., 1943, 134 F.2d 125, 133. The record contains many indications of appellant's fraudulent representations and conduct which the jury could find established his criminal intent:

1. The appellant encouraged the making of false representations concerning exclusive vending machine territories.

2. Appellant consistently urged salesmen to promise two or three-week delivery of machines when there was no intent or possibility to comply with these limits.

3. Appellant devised profit representation material for use by the salesmen which he knew fraudulently depicted the profit possibilities of the vending machines.

4. Appellant sanctioned the use of fraudulent misrepresentations at the time of original sales concerning the repurchase and relocation of vending machines for dissatisfied customers.

■ When this court previously considered an appeal from a similar mail fraud prosecution for fraudulent misrepresentations where fraudulent misrepresentations were conveyed through salesmen at widely different places and times, it recognized that proof of such representations could establish the existence of a scheme to defraud. Reistroffer v. United States, 8 Cir., 1958, 258 F.2d 379, 387. In the instant case it is clear that fraudulent misrepresentations were made by appellant's agents with his knowledge and encouragement. Totality of appellant's conduct while involved in the National scheme as set out above is properly admissible as evidence and subject to the consideration of the

jury in its determination of the appellant's intent. Shreve, v. United States, 9 Cir., 1939, 103 F.2d 796, 803. Finally, permissively indicative of appellant's intent is the absence of any effort on his part to rectify the wrongs suffered by victims of the vending machine scheme. United States v. Press, 2 Cir., 1964, 336 F.2d 1003, 1011, cert. denied, 379 U.S. 965, 85 S.Ct. 658, 13 L.Ed.2d 559. Although appellant was well aware of the complaints made by many defrauded customers, he made no effort to make good. A thorough examination of the record compels the conclusion that there was substantial evidence of appellant's criminal intent to defraud as well as his control of National. His claim of insufficiency of the evidence must fail.

■ II. *Denial of motion to dismiss Count 5.* Count 5 of the indictment in the instant case was based upon a complaint letter sent by Elmer Bender to National. The mailing and receipt of the letter are not questioned. Although appellant claims that the aforementioned letter was written by Bender only upon the instigation of the government with the intent of obtaining evidence against National, the testimony of Bender indicates that his principal purpose in writing the letter was to recover money he had prepaid National for vending machines that had never been delivered. Appellant further contends that this letter was not written by him nor caused to be written by him within the meaning of 18 U.S.C.A. § 1341 and hence is not a proper basis for prosecution. It is well settled that the letter upon which an indictment is based need not be written by the defendant nor need the letter contain within itself the fraudulent scheme, but "It is sufficient that the use of the mails was *caused* by the defendant in furtherance of the fraudulent scheme." (Emphasis supplied.) United States v. Hopkins, 6 Cir., 1966, 357 F.2d 14, at page 17. See, also, Atkinson v. United States, 8 Cir., 1965, 344 F.2d 97, 98, cert. denied, 382 U.S. 867, 86 S.Ct. 141, 15 L. Ed.2d 106. Further, even if it could be established that the writing of Bender's

letter had not in the first instance been *caused* by appellant's scheme to defraud, the rule recognized by federal courts is that where there has been a general sentence imposed based upon several counts, conviction upon any one of the counts is sufficient to support the judgment. See, Atkinson v. United States, supra, at page 98, and cases cited therein. Conviction and sentence upon the other counts being valid, the general sentence must stand. Motion to dismiss Count 5 was properly denied by the trial court.

III. *Denial of due process through prosecutor's improper reference to prior indictment.* Appellant claims that mention of a prior indictment on cross and recross-examination was so prejudicial to the minds of the jury in this action that he was denied a fair trial. Appellant also refers to cross-examination and closing argument comment by the prosecution which he claims indicate guilt by association but this is not urged as a ground of error and is evidently mentioned only to buttress his prior indictment argument. Reference to the prior indictment was made at two places in the transcript, the first actual utterance being that of appellant. The government questioned appellant on cross-examination concerning a lulling letter which he had sent out to explain why there had been a delay on the delivery of light bulb vending racks—an earlier business venture similar to the one involved in the instant action. The precise reason given in his letter for the failure of delivery was "unforeseen circumstances". During the government's attempted clarification of what these "unforeseen circumstances" were, the following exchange occurred:

"Q. Now, what were the unforeseen circumstances here, Mr. Anderson? Were they production problems on these racks as we had with Precision?

"A. May I see the letter?

"Q. You may.

"A. The unforeseen circumstances were a Federal indictment.

"Q. A Federal indictment when?

"A. February or early March, 1962.

"Q. And that involved what?

"A. About the same charges as this one does, only it was dismissed.

"Q. That involved the Allied Tobacco Company, didn't it?

"A. It may have.

"Q. It may have?

"A. I believe it did."

From the testimony it is clear the appellant originally brought out the matter of the indictment, and no objection was interposed at any time over the government's pursuit of the matter once it had been brought to light. The context out of which the cross-examination arose indicates that the government was attempting to establish why there had been a failure of delivery on a contract, similar in most respects to the contracts in the instant case, arising out of a former business venture in which appellant was involved rather than presenting to the jury the fact of appellant's former indictment. In recross-examination the reference to unforeseen circumstances received further consideration.

"Q. Now, in reference to Government's Exhibit 93, the letter of Mr. Nyquist on Consolidated Sales stationery, with a copy to Mrs. Sward, you said that 'Due to unforeseen circumstances beyond my control I would be unable to schedule a location man for the Mora area until after March 1st.' You have told us that as of March 10, that was the fact, that you were indicted?

"A. Indicted, yes.

"Q. March 2nd was the date you were indicted, wasn't it?

"The Court: What year, please?

"Mr. Abramson: 1962.

The Witness: I don't recall the exact day. I know it was in the month.

"By Mr. Abramson:

"Q. But you sold that December 28 of 1961?

"A. Yes.

"Q. You had three months, did you, to schedule the location man, so the unforeseen circumstances had nothing to do with that indictment, is that right?"

■■■■ Again, no objection was interposed to the government's cross-examination of the witness. Appellant cites numerous authorities in support of the accepted principle that for purposes of impeachment nothing short of a criminal conviction is admissible into evidence. Homan v. United States, 8 Cir., 1960, 279 F.2d 767; Echert v. United States, 8 Cir., 1951, 188 F.2d 336; Little v. United States, 8 Cir., 1937, 93 F.2d 401; Salerno v. United States, 8 Cir., 1932, 61 F.2d 419. In all of these cases which appellant cites, quotes and upon which he principally relies, timely objection was urged to the prosecutor's inquiries and an appealable record perfected. Admittedly, no such course was followed in the instant action. Although no record was here made by timely objection, appellate courts are expressly permitted to note and review *plain errors* that substantially affect the rights of the parties. Rule 52(b) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. See, also, United States v. Pennix, 4 Cir., 1963, 313 F.2d 524, 527. But in this case it is clear that plain error has not occurred. Appellant in this action was the first to bring the fact of the indictment into issue by volunteering information which he evidently hoped would relieve him from his admitted failure of performance on a prior contract. Reasonable cross-examination exposed the fact that the prior indictment had nothing to do with his failure of performance under the contract. This court recognizes the generally accepted proposition that the scope of cross-examination relating to collateral matters rests principally within the discretion of the trial court. Rizzo v. United States, 8 Cir., 1961, 295 F.2d 638, 640. No error was committed by the trial court when it permitted the prosecution to cross-examine appellant concerning collateral matters interjected into the proceedings by appellant. To hold otherwise would enable a witness to interpose the fact of a prior indictment in his testimony, refrain from objecting to questions relating to a statement and thus automatically insure for himself the possibility of a new trial. Silence of a witness should not in this manner sabotage the trial. Brennan v. United States, 8 Cir., 1957, 240 F.2d 253, 262.

■■■ IV. *Improper exclusion of evidence.* The offered Exhibit 48, which appellant claims the trial court erroneously refused to admit, consisted of 19 invoices indicating the drop-shipment of vending machines by a cigar vending machine manufacturer to customers of Allied. Appellant claims these exhibits were offered in order to rebut the government's theory that the sales were fraudulent in that no deliveries were intended. By placing these invoices into evidence appellant evidently believed that his good faith in regard to his conduct in prior transactions when he was in control of Allied would be relevant in showing his good faith when he directed National—the latter period being the time in which the instant case arose. The trial court refused to admit the invoices into evidence unless sufficient foundation was laid, reasoning that the invoices were only proof that a certain number of machines had been shipped by the manufacturer to customers of Allied. Only by introducing the original contract for purchase of the machines with the invoice of shipment could it be shown that full compliance had been made with the terms of the original contract. From the record it is clear that when National made shipments of machines to customers, such shipments seldom if ever completely filled the contractual obligation. It is therefore obvious that the admissibility of invoices into evidence was inherently dependent upon the proper presentment of the foundation contracts. Although the appellant was given the opportunity at that time and throughout the course of trial to bring forth proper foundation and insure the admissibility of the exhibits,

he failed to so comply. There was here failure to lay proper foundation. The defendant is entitled to reversal only if he establishes that there was prejudicial error in the court's refusal to admit evidence. See, Alexander v. United States, 8 Cir., 1959, 271 F.2d 140, 144, and cases cited therein. This the appellant failed to do.

■ V. *The trial court's comment upon evidence.* While the prosecuting attorney was questioning Schnabel, president of National, on redirect examination about his wife's personal check book that was also used as the company check book for National (received into evidence as Exhibit J), appellant contends that the trial court made a statement which deprived him of a fair trial. The statement, in context, appears as follows:

"The Court: * * * We are not engaged in an accounting between Mr. Schnabel and the companies. I take it the only purpose in exploring the check books is insofar as it throws light upon Anderson's relation to the National Tobacco Company and Schnabel's relationship to the National Tobacco Company and to these other companies?

"Mr. Abramson: Yes, Your Honor.

"The Court: We are not here to determine where the money went to.

"Mr. Abramson: No, sir, but there is an implication that Mr. Schnabel's memory has all of a sudden gotten good because we told him what to say. I am trying to review what we went over briefly last night so it can show that it went over to this account.

"The Court: If there is any confusion you may explore it if you desire, *but I merely call your attention that we don't need to spend too much time on these matters that are not crucial.*" (Emphasis supplied.)

The italicized statement is the one to which appellant objects. The facts that the bank account used by National as a business account was in the name of Schnabel's wife and that she alone could make withdrawals from it are important

aspects of the appellant's argument that Schnabel in fact controlled National rather than appellant. But a careful examination of the trial court's comment and the context within which it was made clearly indicates that the judicial comment was not directed to the validity or importance of the check book itself. Rather, the court was here concerned with limiting the prosecution's exploration of collateral matters not relative to the instant action; namely, a monetary accounting between Schnabel and National. The real point of concern which the court specifically recognizes is the relationship between Schnabel and appellant, and appellant and National. From reading the record it is apparent that the reason for the court's comment was to prevent crucial concerns from being obscured through the prosecution's pursuit of extraneous matter. This would seemingly be to appellant's benefit rather than to his detriment, as he here claims. In any event, it is clear that Judge Nordbye's remark did not constitute prejudice, much less "plain error" recognizable under Rule 52(b), Federal Rules of Criminal Procedure, 18 U.S.C.A. See, Wilson v. United States, 8 Cir., 1965, 352 F.2d 889, 892, cert. denied, 383 U.S. 944, 86 S.Ct. 1199, 16 L.Ed.2d 207.

■ VI. *Denial of motion for new trial.* Appellant's motion for new trial was made upon the ground of newly discovered evidence; to-wit, (1) two envelopes addressed to National at a secretarial service which had been delivered to National by the service after it left the address at which it had conducted business between 1959 and 1961, and (2) a receipt from the secretarial service for $3.75 showing payment by Schnabel for telephone and mail answering services as of August 1961. It was contended that employment by National of the services along with National's informing customers of its new address are indications of good faith on the part of the company negating a showing of fraud, and would have been persuasive to the jury on a new trial. It was also

contended that the newly discovered evidence would conclusively destroy the credibility of Marilyn J. Peterson, a partner in the secretarial service which purportedly forwarded mail to National, and who had testified on direct examination that secretarial services had not been performed for the appellant or any of the companies with which he was involved subsequent to January 6, 1959. First, we direct attention to the fact that motions for new trial grounded upon newly discovered evidence are viewed with disfavor, and that such motions are addressed to the sound discretion of the trial court, whose determination thereof will not be reversed excepting where it is shown that there has been an abuse of discretion. Connelly v. United States, 8 Cir., 1959, 271 F.2d 333, 334, and cases cited therein. This court long ago, in Johnson v. United States, 8 Cir., 1929, 32 F.2d 127, set out the prerequisites for the granting of a new trial upon the ground of newly discovered evidence at page 130:

> " * * * There must ordinarily be present and concur five verities, to wit: (a) The evidence must be in fact, newly discovered, i. e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on, must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal."

The guide lines for passing on a motion for a new trial on the ground of newly discovered evidence as set forth in *Johnson* have been consistently applied by this court since. See, Ferina v. United States, 8 Cir., 1962, 302 F.2d 95, 107, and cases cited therein. It seems obvious herein that if the referred to newly discovered evidence had been submitted to the jury its sole effect would have been possible impeachment of one of the government's minor witnesses. Further, the evidence, even if newly discovered, is not of such a nature as to probably produce an acquittal, another prerequisite to the granting of the motion. We conclude that the District Court did not abuse its discretion and that the motion for new trial was properly denied.

After an exhaustive review of this extensive record, we find that the appellant received a fair and impartial trial and was properly convicted upon very substantial evidence.

This case is in all things affirmed.