**UNITED STATES of America,
Appellee,**

v.

**Larry Gene HIGGINBOTHAM, Appellant.
No. 71–1256.**

United States Court of Appeals,
Eighth Circuit.

Dec. 13, 1971.

Warren E. Dupwe, Jonesboro, Ark., for appellant.

Fletcher Jackson, Asst. U. S. Atty., Little Rock, Ark., for appellee.

Before LAY, HEANEY and STE-PHENSON, Circuit Judges.

LAY, Circuit Judge.

This is an appeal from a conviction for willfully and knowingly possessing a firearm having previously been convicted of a felony, in violation of 18 U.S.C. App. § 1202. Defendant's sole contention on appeal is that the evidence was insufficient to show that he had possession of the firearm in question. There exists no dispute as to defendant's prior felony convictions. He asserts that the government failed to subpoena the only police officer who could verify defendant's version as to the events which occurred at the time of his arrest. After reviewing the record, we find no merit in defendant's contention and affirm the conviction.

The government's evidence showed that racial disturbances involving the defendant had been the subject of official concern by local officers in Parkin,

Arkansas, for some time. On the evening of September 21, 1970, after a disturbance in town, the defendant, along with two other men, C. B. Raines and Albert Lewis, were found by police running through a vacant lot. Both Raines and Lewis were carrying shotguns. The troopers stopped the three men and directed all of them into the sheriff's car. Trooper Barnett testified that as defendant walked away from him to enter the car he noticed a pistol in his right rear pocket. Barnett's identification of the weapon was positive. He stated the area was well lit and that he was only five or six feet from the defendant when he noticed a handle of a gun and part of the metal protruding from the defendant's right rear pocket. Upon seeing the weapon Barnett shouted, "He has a pistol. Get the pistol from him." Sheriff Hopper testified that he was facing the defendant as he got into the car and did not observe any gun. He said by the time he heard the trooper yell, the defendant had already been seated in the car. At this time the defendant came back out of the car and the sheriff noticed a .22 caliber pistol lying on the seat where the defendant had been sitting. The evidence is undisputed that the gun found in the back seat of the sheriff's car was owned by one of the other men and not the defendant. On cross-examination Barnett verified that an auxiliary policeman by the name of Graves was also in the vicinity at the time.

Defendant testified himself and offered one additional witness. The witness, Bob Guy, testified that he and the defendant had been riding around in an automobile before the arrest. He stated that at no time did he observe a gun in defendant's rear pocket. Defendant testified that moments before his arrest he had observed some fracas in the vacant lot. He had seen Lewis and Raines pull up, jump out of their car and run across the open field. He joined them to see what was going on. He said the sheriff and state troopers arrived almost simultaneously and ordered them to come

back. He stated: "[T]hey put C. B. in the car, and David Graves, auxiliary officer, searched me and put me into the car. . . ." He further stated, "He [Graves] searched me and reached in my back pocket and said 'What's that?', and I had a hair brush in my back pocket and I pulled it out and showed it to him. He searched me the first time and then put me in the car . . . ." Thereafter, he noticed Albert Lewis refusing to get into the car so he got back out saying he wasn't going to jail either. As the sheriff was putting him back in, he saw the gun lying on the seat. Defendant claims that Albert Lewis owned the gun and that C. B. Raines admitted to him that he [Raines] actually had the gun that night.

The defendant did not call Graves as a witness to support his story and the government did not call Graves as a rebuttal witness to contradict this defense. Each side now claims that the failure of the other to call Graves creates the inference that Graves' testimony would have been unfavorable to that party.

The defendant claims that Sheriff Hopper's statement that he did not see a gun contradicts Trooper Barnett's version that defendant had a gun. He asserts Barnett's identification of the weapon is weak and he contends that the government's failure to call the other three officers, including Graves who defendant claims searched him, justifies if not compels the inference that their testimony would have been adverse to the government. According to the defendant, these alleged defects prevent the government's case from rising to the level of sufficiency required to prove guilt.

■ It has long been settled that the credibility of witnesses is peculiarly within the province of the trier of fact. United States v. May, 419 F.2d 553 (8 Cir. 1969). Conflicts in the testimony are to be resolved by the jury. Smith v. United States, 407 F.2d 356, 358 (8 Cir. 1969), cert. denied, 395 U.S. 966, 89 S.

Ct. 2113, 23 L.Ed.2d 753. As long as the alleged contradictions within the government's case do not render the government's proof equivocal, and substantial evidence otherwise exists to enable the jury to find guilt beyond a reasonable doubt, a court must not interfere with the submission of the case to the jury or with the verdict of the jury thereafter.

The jury could find that Sheriff Hopper did not see the gun because he was facing the defendant while directing him into the auto. On the other hand, the testimony of Trooper Barnett was highly persuasive. Vigorous cross-examination did not sway him from his story. His testimony alone is sufficient to provide the quantum of proof needed to submit the case to the jury. The government's evidence was not rendered equivocal by the asserted defense. Instead, it was *contradicted* by the testimony of defendant and his witness. Trooper Barnett's testimony was as probative of the fact of possession before defendant's testimony as after. The resulting contradiction did nothing more than create an issue of fact for the jury. Even though its case may have been more persuasive had it produced the rebuttal witness, the government had no burden to further rebut the defendant's testimony. Once the government has presented sufficient evidence of the crime to support a finding of guilty, it has no duty to present further evidence after the defense rests. Cf. United States v. Rizzo, 416 F.2d 734 (7 Cir. 1969); United States v. Lessaris, 221 F.2d 211 (7 Cir. 1955); United States v. Conforti, 200 F.2d 365 (7 Cir. 1952), cert. denied, 345 U.S. 925, 73 S.Ct. 782, 97 L.Ed. 1356 (1953).

Defendant urges that the principle of Wesson v. United States, 172 F.2d 931 (8 Cir. 1949), is controlling. In *Wesson* this court held: "The failure of the government, *under the circumstances disclosed,* to call these witnesses justifies, if it does not compel, the inference that their testimony would have been against the government." 172 F.2d at 936.

(Emphasis ours.) In *Wesson* a practicing physician who filled his own prescriptions was found guilty of selling or otherwise disposing of a certain quantity of narcotics to unknown persons in unknown quantities not in pursuance of a written order. The government's only evidence was "entirely circumstantial" and consisted of proof of the quantity of defendant's purchases and proof of alteration of three prescriptions written by defendant. There was no direct evidence of any illegal transactions. Proof of the alleged unlawful disposals rested on inferences to be drawn from the proven purchases and the proven alterations. The doctor did not deny the alteration of his prescriptions. However, he explained that at times he would write a prescription before visiting a patient and would then administer a larger dosage. Thus, upon returning to his office he would change the amounts written on the original prescription rather than writing a new one. This explanation "stood without dispute." The government had earlier subpoenaed one of the patients to whom the doctor referred but did not call him. Another patient and members of his family were allegedly present when the doctor claims to have administered the medicine and could easily have been called. The government's failure to call these witnesses was found to justify, if not compel, the inference that their testimony would not contradict the defendant's explanatory testimony. Thus the court found that the defendant's testimony "fully explain[ed] the only discrepancies that appeared in any of his prescriptions" and proved the circumstances to be as consistent with innocence as they were with guilt.

The government's only proof in *Wesson* consisted of facts that gave rise to equivocal inferences of guilt as well as innocence. The failure of the government to call the defendant's patients created an additional inference which merely underscored the already existing inference of innocence and corroborated the court's conclusion that acts violative of the narcotics law had not been suffi-

ciently proven.[1] The result in *Wesson* turned on the inadequacy of the government's principles of the proof. The *Wesson* case is perhaps best explained in Holland v. United States, 348 U.S. 121, 135–136, 75 S.Ct. 127, 135, 99 L.Ed. 150 (1954), where the government utilized a net worth computation in a tax fraud case and the Supreme Court observed:

> "When the Government rests its case solely on the approximations and circumstantial inferences * * *, the cogency of its proof depends upon its effective negation of reasonable explanations by the taxpayer inconsistent with guilt. Such refutation might fail when the Government does not track down relevant leads furnished by the taxpayer—leads reasonably susceptible of being checked, which, if true, would establish the taxpayer's innocence. When the Government fails to show an investigation into the validity of such leads, the trial judge may consider them as true and the Government's case insufficient to go to the jury."

■ Here there exists adequate direct proof of the fact of possession. The government's case does not rest upon circumstantial evidence. Trooper Barnett's identification of the gun is based on his own direct observations. It was for the jury to either believe or disbelieve his statements. No equal inference of innocence can be drawn from this testimony. Barnett's statement that he saw a gun in defendant's possession is as consistent with guilt as it is *inconsistent* with innocence. Failure to produce rebuttal witnesses cannot alter this fact.

Moreover, we observe that the defendant knew of Graves, his whereabouts and his alleged testimony. He could have been subpoenaed by the defendant as well. Cf. Gass v. United States, 135 U.S.App.D.C. 11, 416 F.2d 767 (1969). We think these facts preclude any unfavorable inference from arising against the government.[2] United States v. Chase, 372 F.2d 453, 467 (4 Cir. 1967), cert. denied, 387 U.S. 907, 87 S.Ct. 1688, 18 L.Ed.2d 626; Margoles v. United States, 402 F.2d 450 (7 Cir. 1968).[3]

In Wilson v. United States, 352 F.2d 889, 892 (8 Cir. 1965), this court cautioned that:

> "[T]he rule of presumption from failure to produce witnesses is one which is to be applied with caution, Schoenberg v. Commissioner of Internal Revenue, 8 Cir., 302 F.2d 416, 420; that it is not one which is abstractly entitled to be given application; but that it is to be accorded opportunity for significance and effect only when there has been shown a factual area in which it can logically operate, Jenkins v. Bierschenk, 8 Cir., 333 F.2d 421, 425."

The judgment is affirmed.

---

1. The effect of this inference has been earlier explained as follows:
   "The extent of a party's right to invoke his opponent's failure to call an available witness, when such right exists, is to impair the value of the latter's proofs, and to give greater credence to the positive evidence of the former, upon any issue upon which it is shown that such witness might have knowledge." Stocker v. Boston & M. R. Co., 84 N.H. 377, 151 A. 457 (1930).

2. The trial court did instruct "A reasonable doubt may arise not only from the evidence produced, but also from the lack of evidence."

3. There exists no claim here that the government has knowingly concealed exculpatory evidence. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).